**Donna BUSHONG and Gary Bushong, Parents of Jonathan Bushong, Appellants–Plaintiffs,**

v.

**David WILLIAMSON, Appellee– Defendant.**

**No. 54A01–0103–CV–100.**

Court of Appeals of Indiana.

Nov. 27, 2001.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, IN, Attorney for Appellants.

Shannon L. Robinson, Kelley, Belcher & Brown, Bloomington, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Appellants, Gary and Donna Bushong, challenge the trial court's granting of summary judgment in favor of Appellee David Williamson on their complaint for damages arising from the alleged battery of their son, Jonathan Bushong. Upon appeal, the Bushongs present the following issues which we restate:

(1) Whether a trial court may rely upon documents outside the Complaint in determining if the Complaint alleges that the Defendant's acts were within the scope of employment for purposes of maintaining a lawsuit against a government employee personally under Ind.Code § 34–13–3–5;

(2) Whether an action may be maintained against a government employee personally when the action may

have arisen in the course of employment;

(3) Whether an affidavit was properly admitted under hearsay exceptions 803(6) and 803(8) and appropriately relied upon by the trial court in granting summary judgment; and

(4) Whether a complaint for criminal battery may result in pecuniary losses to a property interest for which the parents of the child struck may properly seek to recover statutory damages, fees and expenses in accordance with Ind.Code § 34–24–3–1.

We reverse.

David Williamson is a teacher for the South Montgomery School Corporation (School) in New Market, Indiana. On March 20, 1998, he was involved in an incident with two students in his physical education class. While playing kickball with his fifth grade physical education class, he tagged Jonathan Bushong out. Jonathan then kicked Mr. Williamson in the buttocks. When Jonathan attempted to kick Williamson a second time, after receiving a verbal warning not to kick him again, Williamson caught Jonathan's foot in mid-air and picked him up by his foot. While holding Jonathan in the air, he carried him a short distance. After Williamson set Jonathan on the floor, but while still holding Jonathan's feet over his head, Williamson struck Jonathan at least twice in the buttocks. Mr. Williamson claims that he did not act in a disciplinary manner, but that his actions were meant to be playful. Jonathan Bushong's account of the incident is different in that he claims that he received several hard hits on the back, legs, and buttocks which led to bruises which were photographed by Donna Bushong, his mother. As Williamson carried Jonathan by his foot, a second student, Devin Ewoldt, also kicked Williamson in the buttocks. Mr. Williamson admits to striking Devin, but says that he "patted" him in the "same teasing manner" as he did Jonathan. Appellants' App. at 39.

Pursuant to Ind.Code § 34–13–3–8 (Burns Code Ed. Repl.1998), a Notice for Claim Under the Indiana Tort Claims Act (Notice) was filed on behalf of Jonathan Bushong on August 4, 1998, and was received on August 10, 1998, by both the School and the Indiana Political Subdivision Risk Management Commission.

Gary and Donna Bushong then filed a complaint against Williamson personally, alleging that the injuries sustained by Jonathan caused damage to them by a loss of consortium, love, and companionship.[1] In their complaint, the Bushongs listed Williamson's act as being both a battery[2] against their son and an interference with their property right[3] in their son. Williamson then filed a motion for summary judgment which was granted by the trial court.

## I

### Summary Judgment

#### A. Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Southport Little*

---

1. No complaint was filed against the School Corporation nor was it joined as a defendant in this litigation.

2. Ind.Code § 35–42–2–1 (Burns Code Ed. Supp.2001).

3. Ind.Code § 35–43–2–2 (Burns Code Ed. Supp.2001).

*League v. Vaughan,* 734 N.E.2d 261, 269 (Ind.Ct.App.2000), *trans. denied.* We stand in the shoes of the trial court when reviewing an entry of summary judgment. *Ousley v. Board of Comm'rs of Fulton County,* 734 N.E.2d 290, 293 (Ind.Ct.App.2000), *trans. denied.* We must determine whether there is a genuine issue of material fact and whether the trial court correctly applied the law in our review of a motion for summary judgment. *Southport Little League,* 734 N.E.2d at 269. If the trial court misapplied the law, we will reverse the entry of summary judgment. *Peterson v. First State Bank,* 737 N.E.2d 1226, 1230 (Ind.Ct.App.2000), *reh'g denied.*

 In a motion for summary judgment, the moving party has the burden of establishing that no genuine issue of material fact exists. *Southport Little League,* 734 N.E.2d at 269. Material facts are those which facilitate the resolution of any of the issues involved. *Id.* Any doubts as to any facts or inferences to be drawn therefrom are resolved in favor of the nonmoving party. *Id.*

The trial court found as a matter of law that the acts of Williamson, which led to the lawsuit by the Bushongs, occurred within the scope of Williamson's employment. The trial court also found that because the acts were within the scope of employment, Williamson was entitled to notice under the Indiana Tort Claims Act (Act). We disagree with the trial court's reasoning as to the act occurring within the scope of employment and also hold that the trial court misapplied the law with regard to notice under the Act. We therefore hold that summary judgment in favor of Williamson was inappropriate.

To determine the validity of the trial court's granting of summary judgment, we must look to the meaning of Ind.Code § 34–13–3–5 (Burns Code Ed. Repl.1998). In doing so, we must decide whether the amending of the statute by the legislature and the recodification from Ind.Code § 34–4–16.5–5 to I.C. § 34–13–3–5 changed the meaning of the law.

 In construing a statute, our objective is to determine the intent of the legislature. *Joe v. Lebow,* 670 N.E.2d 9, 18 (Ind.Ct.App.1996). The language of the statute is the primary tool for determining legislative intent. *Id.* However, we do not read the language of the statute in isolation, but rather, consider the language and structure of the entire statutory scheme and the changes made to the statute over time. *Id.* In most circumstances, a statutory amendment may be appropriately construed as indicative of legislative intent to change the statute's meaning. *Id.*

### B. *Filing of Complaint Against Employee Personally*

Indiana Code § 34–13–3–5(a) states, "[a] lawsuit alleging that an employee acted within the scope of the employee's employment must be exclusive to the complaint and bars an action by the claimant against the employee personally." I.C. § 34–13–3–5(b) provides:

"A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:

(1) criminal;

(2) clearly outside the scope of the employee's employment;

(3) malicious;

(4) willful and wanton; or

(5) calculated to benefit the employee personally."

The quoted portions of Sections 5(a) and (b) represent a change from the original wording of the Act. Section 5(a) was amended in 1995 to include the above lan-

guage specifically restricting lawsuits which allege that the action was within the scope of employment to be brought against the governmental entity only and not the employee personally.[4] It also allowed for a complaint to be amended and brought against an employee personally if the government entity used as an affirmative defense that the action was committed outside the scope of employment. The language of Section 5(b) was added and the old Section 5(b) was recodified to 5(c). In Section 5(b), the legislature enumerated the instances in which an employee could be sued personally.

▬▬▬ The trial court misread I.C. § 34–13–3–5 and misconstrued the legislative intent in regard to the Act. We hold that the language of Section 5(a) means that a lawsuit may not be brought against a government employee personally if the complaint, on its face, alleges that the action leading to the claim occurred within the scope of employment. Generally, a court will look to all parts of the pleadings and designated materials in determining whether to grant a motion for summary judgment. T.R. 56(C); *Abbott v. Bates,* 670 N.E.2d 916, 921 (Ind.Ct.App.1996). However, the language of Section 5(a) restricts the court's ability to look at documents outside of the complaint for pur-

poses of determining whether or not the plaintiffs allege that the act occurred within the scope of employment.

▬▬▬ In the order granting summary judgment, the trial court found that the Bushongs' pleadings and discovery responses characterized Williamson's actions as being within the scope of employment. The support that the trial court uses for this conclusion is that the Notice provided to the School stated that Williamson's "actions were done within the scope of Williamson's employment." Appellants' App. at 5. The trial court also referenced language from the complaint that stated, "Defendant, David Williamson, is a physical education teacher at South Montgomery School Corporation," (Appellants' App. at 5) and the Bushongs' response to an Interrogatory which stated that Williamson acted "as an employee of a school corporation, *while engaged in his official duty* on school property." Appellants' App. at 6 (emphasis in original). The trial court thereby concluded that the Bushongs alleged in their complaint that the actions were within Williamson's scope of employment. We respectfully disagree with the trial court's reasoning.

In the complaint the Bushongs' filed, they did not allege that Williamson com-

4. In its current form, I.C. § 34–13–3–5(a) retained the provision in the predecessor statute I.C. § 34–4–16.5–5(a) which states: "A judgment rendered with respect to or a settlement made by a governmental entity bars an action against an employee whose conduct gave rise to the claim resulting in that judgment or settlement." The purpose of this provision was said to "ensure that a public employee will not be left to bear sole liability in any case where the claim was initially filed against both the governmental entity and its employee." *Board of Comm'rs of Cass County v. Nevitt,* 448 N.E.2d 333, 340 (Ind.Ct.App. 1983).

In its 1981 form, the statute also contained the provisions now set forth in I.C. § 34–13–

3–5(c) which requires the governmental entity to pay any judgment against an employee if the act of the employee was within the scope of employment, whether or not the employee could or could not be held personally liable. It also contained the present provision of (d) which requires the government to provide counsel and pay the costs and fees of the defense of a claim for the acts of an employee within the scope of employment whether or not the employee could be held personally liable. Again, it would seem that these provisions in their original context contemplated that the claim was made against both the governmental entity and the employee.

mitted the act while in the scope of employment. The complaint only acknowledged that Williamson was a teacher. Such allegation does not constitute an allegation that the act took place within the scope of employment.[5]

It would appear from the matters of record, though not from the Complaint itself, that the acts of Williamson took place while he was in the course of his employment. "In the course of employment" is used in a temporal and spatial context. It refers to the time, place, and circumstances under which the act took place. *Conway ex rel. Conway v. School City of East Chicago,* 734 N.E.2d 594 (Ind. Ct.App.2000), *trans. denied.* Acting in the course of one's employment is not the same as acting within the scope of that employment. "Scope of employment" focuses upon the relationship between the act complained of and the nature and duties of the employment itself. *See Stropes by Taylor v. Heritage House Childrens Center of Shelbyville, Inc.,* 547 N.E.2d 244 (Ind.1989), *infra.*

If a complaint which alleged the occupation of a defendant were conclusive to whether the act was committed within the scope of employment, the ability of the trier of fact to determine whether the act actually was within the scope of employment would be destroyed. Indiana Code § 34–13–3–5(a) does not say that the language of the complaint is conclusive to whether the act was within the scope of employment, but only that if the complaint alleges that the act was within the scope of employment it may not be brought against the employee personally. Instead, the action must be brought against the governmental entity.

The trial court also erred in considering the answer to the Interrogatory and the phrasing of the Notice[6] in deciding whether the claim alleged that the act was within the scope of employment. The wording of I.C. § 34–13–3–5(a), that "a lawsuit alleging that an employee acted within the scope of the employee's employment must be exclusive to the complaint," clearly states that the court must look only to the face of the complaint in determining whether the plaintiff alleges that the act occurred within the scope of employment.[7]

---

5. Since the date that summary judgment was granted in this case, another panel of this court has addressed this same issue. In *Miner v. Southwest School Corporation,* 755 N.E.2d 1110 (Ind.Ct.App.2001) that panel seemed to rely upon the fact that the complaint stated that the individual was a school superintendent and that he "may have been working in that capacity at the time" of the accident. However, it does not appear that the court was holding that those words meant that the accident occurred while the superintendent was in the scope of employment, but instead that the statement did not lend credence to plaintiff's argument on appeal that the action occurred clearly outside the scope of employment. This is further supported by the court noting that the plaintiff originally had pursued the lawsuit against the superintendent upon the grounds that he acted willfully and wantonly.

6. It was also inappropriate for the trial court to look to the Notice for Claim for support for its reasoning because the Notice was provided to the School for a claim solely by Jonathan Bushong and not on behalf of his parents. To be effective and to provide proper notice to the governmental entity, the notice for claim must list each party who intends to make a tort claim against the government. *See Putnam County v. Caldwell,* 505 N.E.2d 85, 87 (Ind.Ct.App.1987) (holding that notice provided to a governmental entity for the injured husband was not proper tort claim notice for the wife to maintain an action for loss of consortium).

7. The conclusion of the dissent that we transform I.C. § 34–13–3–5(a) into a "magic words" provision would seem to disregard the specific pronouncement that the allegation "is exclusive to the complaint."

In addressing the correctness of the trial court's decision, we also must address the question of whether, as a matter of law, Williamson's actions could be within the scope of employment. Generally, whether the tortious act of an employee is within the scope of employment is a question of fact, but under certain circumstances the question may be determined as a matter of law. *Kemezy v. Peters,* 622 N.E.2d 1296, 1298 (Ind.1993). The type of act committed does not control whether an employee was acting in the scope of employment. *Stropes,* 547 N.E.2d at 249–250. Even unauthorized acts may be within the scope of employment if there is a sufficient association between acts which were authorized and the unauthorized acts. *Konkle v. Henson,* 672 N.E.2d 450, 457 (Ind.Ct.App.1996). In a situation in which some of the acts were authorized, and others were not, the question of whether the unauthorized acts were within the scope of employment should be answered by the jury. *Id.*

Here, the Bushongs have alleged that Williamson's acts were excessive in that he beat Jonathan and caused bruising and humiliation. The Bushongs further allege that the act was criminal and outside the scope of his employment as a teacher. Williamson counters that he only "patted" Jonathan twice on the buttocks and that the action was done playfully. Appellants' App. at 39. Williamson does not claim that the actions were disciplinary, and, therefore, at least for a time and to a limited extent, authorized as within a teacher's disciplinary duties.

In *Stropes,* a mentally retarded boy was sexually assaulted by a nurse's aide. 547 N.E.2d at 249. The aide had authority to undress the boy and to touch his genitals and other parts of his body while bathing

him. *Id.* However, the court held that it was for a jury to decide if the acts were done within the scope of employment because there was a factual question as to whether the unauthorized acts were significantly associated with the authorized acts. *Id.* at 250; *see also Gomez v. Adams,* 462 N.E.2d 212, 224–25 (Ind.Ct.App.1984) (holding that the facts and inferences to be drawn therefrom were sufficient for a jury to conclude that the act of conversion occurred within the scope of employment).

Here, a jury under the evidence might reasonably find that Williamson was disciplining Jonathan and that the acts were authorized, putting them within the scope of employment. A jury could also find that the acts were disciplinary but went beyond any authorization from the school because of the severity of the contact and were therefore outside the scope of employment. A jury could also find that the act was horseplay, and once again, that it could have either been within the scope of employment or outside the scope of employment. The facts here present a dispute as to whether Williamson's acts were authorized or unauthorized. The issue for resolution is one for the trier of fact.[8]

II

*Maintenance of Lawsuit Against Employee Personally*

A. *Notice to Employee of Lawsuit*

Appellants also claim that the trial court erred by determining that I.C. § 34–13–3–8 required notice to be given to Williamson before a claim could be brought against him personally. The trial court determined that case law in Indiana required that notice be given to the employee when the employee was personally sued

---

8. The dissent, mistakenly we believe, concludes that Williamson's acts were, *as a mat-* *ter of law,* within the scope of his employment.

and the acts leading to the lawsuit were within the reach of the Act.

■ The trial court, in requiring notice be provided to Williamson, misapplied the relevant case law. While the trial court held that the law required that tort claims notice be provided to the employee, case law and the Act only require that notice be provided to the governmental entity when the employee is sued personally. *See Poole v. Clase*, 476 N.E.2d 828 (Ind.1985); *VanValkenburg v. Warner*, 602 N.E.2d 1046 (Ind.Ct.App.1992), *trans. denied; Davidson v. Perron*, 716 N.E.2d 29 (Ind. Ct.App.1999), *trans. denied.* When the employee is sued personally, notice is only required to the government if the act occurred within the scope of employment. *VanValkenburg*, 602 N.E.2d at 1049.

In this case, no notice was given to Williamson because no notice was required. Notice was also not provided to the School by Donna and Gary Bushong, because as stated in footnote 6, *supra*, the Notice made the School only aware that Jonathan Bushong intended to pursue a claim against the School. The Notice did not put the School on notice that Donna and Gary Bushong intended to maintain an action on their own behalf.

### B. *Maintenance of Lawsuit*

■ Because no notice was required to Williamson, the question becomes: when may an action be maintained against an employee personally and when must notice be provided to the governmental entity. As stated above, when an employee is sued personally, but the government is not sued, notice is only required to the government if the act or omission occurred within the scope of employment. *Id.*[9] An act or omission is deemed to have occurred within the scope of an individual's employment if the act is done by one acting as the employer's alter ego or according to the employer's direct order. *Shelby v. Truck & Bus Group Div. of General Motors Corp.*, 533 N.E.2d 1296, 1298 (Ind.Ct.App. 1989).

A reading of I.C. § 34–13–3–5(a) in isolation would seem to strongly imply that if the acts of the employee are within the scope of employment, the employee may neither be sued personally nor be subject to a judgment for the damage or injury. Such is not the case, however.

The legislature has declared that there are times when it is appropriate to sue the employee personally. This is true whether or not the facts as they ultimately unfold reflect that the employee's actions were within the scope of his employment, so long as the complaint itself does not allege that the employee acted within the scope of his employment. This seeming anomaly is demonstrated by I.C. § 34–13–3–5(c) which requires the governmental entity to pay a judgment against the employee when the employee's act was within the scope of employment "*regardless of whether the employee can or cannot be held personally liable for the loss,*" and by I.C. § 34–13–3–5(d) which requires the governmental entity to provide counsel and pay all costs and fees incurred by an employee in defense of a claim or suit for acts within the scope of employment, "*regardless whether the employee can or cannot be held personally liable for the loss.*" (emphases supplied).

■ Although we have held in this case that the issue of scope of employment must be determined by the trier of fact, this is not to say that in some situations the court will not be able to determine as a matter of law that an act or omission

---

9. Notice to the governmental entity was and is required because of the duty of the govern-

ment to pay a judgment, provide counsel, and pay costs for the employee's defense. *Id.*

occurred within the scope of employment. When it is clear that an act or omission was committed within the scope of employment, the trial court may make its determination as a matter of law and prevent a plaintiff from attempting to circumvent the requirements of the Act. However, the court should not use its power to determine whether an act or omission did occur within the scope of employment as a matter of law when there is a factual dispute that must go to the jury. While we understand that judicial economy is important, we also fully believe that an individual should not be improperly denied his day in court. *Southport Little League,* 734 N.E.2d at 269.

In effect, the Act as written allows for an individual to sue the employee personally even if the act or omission in question occurred within the scope of employment. The only limit to a suit being brought against the individual is that the complaint, on its face, not allege that the act occurred within the scope of employment, and it must meet one of the other criteria listed in Section 5(b).

When a party is not sure whether an act or omission occurred within the scope of employment, it could be asserted that the plaintiff may sue in the alternative; one action maintained against the government alleging that the act or omission occurred within the scope of employment and the other maintained against the employee personally under the guidelines of Section 5(b). We do not address the merits or intricacies of maintaining such separate actions, but only point out that I.C. § 34–13–3–5 as written seems to present this as a possibility.

In the present case, Donna and Gary Bushong did not allege that the act occurred within the scope of employment. As required in Section 5(b), they alleged that the contact was criminal and provided a reasonable factual basis that a battery may have occurred. Based on these facts and the above analysis, we conclude that the Bushongs complied with the requirements of Section 5(b) of the Act and that there is a question of fact as to whether the contact was within the scope of employment. In so determining, we hold that the trial court misapplied the appropriate law and that the designated evidence does not indicate that Williamson has met his burden of proving that no genuine issue of material fact exists. Therefore, summary judgment as to whether Williamson's act was within the scope of employment was inappropriate in this case.

### Remaining Claims

The other issues raised by the Bushongs need not be discussed at this time. The first, whether the trial court should have relied upon the affidavit of James Zelinski in summary judgment and if it was properly admissible under the hearsay exceptions listed, will not be addressed as it was raised in a review of summary judgment and we have held that summary judgment was improper in this case on separate grounds. For the same reason, we will not address whether a complaint for criminal battery against a child may result in a pecuniary loss to a property interest for which parents can recover.

### Conclusion

■ Indiana Code § 34–13–3–5(a) mandates that the court look only to the complaint to determine if the lawsuit alleged that the act occurred while in the scope of employment. A lawsuit may be maintained against a governmental employee personally if the complaint does not allege that the act occurred within the scope of employment so long as one of the criteria listed in I.C. § 34–13–3–5(b) is met, even if the act occurred within the scope of employment.

We reverse and remand to the trial court for proceedings not inconsistent with this opinion.

RILEY, J., concurs.

FRIEDLANDER, J., dissents with opinion.

FRIEDLANDER, Judge, dissenting.

I believe the trial court correctly concluded that the allegation of negligence upon which the Bushongs' action is premised was against a government employee acting within the scope of his employment. Accordingly, I respectfully dissent from the reversal of summary judgment that was based upon that conclusion.

Ind.Code Ann. § 34–13–3–5(a) prohibits a lawsuit against a public employee for actions committed while the employee was acting within the scope of employment. The language of that provision is clear and unmistakable, and upon that limitation we are all agreed. I part company with my colleagues, however, in their conclusion that subsection (a) is limited in application to, practically speaking, only those cases where the complaint uses language parroting the words of the statute. Put another way, according to the majority, the prohibition against suing public employees applies only when the complaint, *on its face,* asserts that the allegedly negligent acts were committed "within the scope of the defendant's employment," or words to that effect. I believe the majority's holding in the instant case has transformed subsection (a) into a "magic words" provision. Consistent with this reasoning, so long as a plaintiff does not make the tactical mistake of describing the complained-of acts by using the phrase "in the scope of employment," then the matter will proceed to trial. I believe that this interpretation of subsection (a) is inconsistent with IC § 34–13–3–5 when that statute is read as a whole.

As the majority indicates, subsection (a) provides that a public employee may not be sued personally for undertaking actions that were within the scope of employment. Subsection (b) provides that, when sued for negligence, governmental entities can plead as an affirmative defense that the allegedly negligent act was committed by an employee who was acting outside the scope of employment. Subsection (b) also provides that the plaintiff may amend the complaint in such cases to include an allegation against the employee personally. In my view, subsection (c) does no more than delineate those conditions under which our courts have determined that, in some cases, an employee was not acting within the scope of employment. *See, e.g., City of Anderson v. Davis,* 743 N.E.2d 359 (Ind.Ct.App.2001) (acts characterized as willful and wanton behavior may take such actions outside the scope of employment, thus shielding the employer from liability), *trans. denied; Southport Little League v. Vaughan,* 734 N.E.2d 261 (Ind.Ct.App. 2000) (an employer may not be liable for an employee's criminal acts if they were done on the employee's own initiative, and the employee had no intention to perform it as part of or incident to the service for which he was employed), *trans. denied.* Accordingly, the statute, as revised, merely clarifies the earlier version by delineating actions that might take an employee's action outside the scope of employment, and also adds the right to amend the complaint if the governmental entity alleges that the employee was not acting within the scope of employment. Keeping in mind the relevant case law prior to the revisions set out above, and in view of the substance of those revisions, I see nothing leading to the conclusion that the legislature intended to add magic words to the landscape.

I pause at this point to express disagreement with another conclusion reached by the majority, i.e., that we may look only to the face of the complaint in determining whether the allegedly tortious acts were committed in the scope of Williamson's employment. As reflected in the discussion above, the majority's conclusion in this regard flows from its interpretation as to the meaning of the recent revisions in IC § 34–13–3–5. My disagreement with the majority on the meaning of those revisions for purposes of adding magic words leads me also to reject this second ramification of that conclusion, *viz.* that courts may not look beyond the complaint in rendering summary judgment on the basis that the defendant was acting within the scope of employment. I discern no persuasive rationale for treating a summary judgment motion differently in this context than it is customarily treated in other contexts. Indeed, our courts have routinely decided the question of whether the allegedly tortious conduct was within the scope of employment in cases such as this. *See, e.g., Burke v. Monroe County Public Library,* 709 N.E.2d 1036 (Ind.Ct.App.1999), *vacated in part on other grounds upon reh'g,* 711 N.E.2d 1288, *trans. denied; Jacobs v. City of Columbus Police Dept.,* 454 N.E.2d 1253 (Ind.Ct.App.1983).

Proceeding upon these principles, it remains only to determine whether the Bushongs alleged that the complained-of acts were committed within the scope of Williamson's employment. In my view, they did. Paragraph 2 of the complaint alleges that Williamson is a physical education teacher at South Montgomery Community School Corporation. It further alleges that the complained-of acts were committed by Williamson upon Jonathan Bushong while Bushong was a student in Williamson's physical education class. The designated materials as a whole reveal that fifth-grader Jonathan Bushong was playing kickball in gym class when his teacher tagged him out. The child then kicked his teacher in the buttocks and was warned by the teacher not to do that again. Jonathan disregarded that warning and attempted to kick his teacher a second time. This time, the teacher caught Jonathan's foot in mid-kick, lifted him off of the ground and carried him a short distance. Still holding Jonathan upside-down by his feet, the teacher swatted Jonathan's backside at least twice. In my view, Williamson's actions, as alleged by the Bushongs, constituted nothing more or less than the disciplining of a recalcitrant student.

"In Indiana, an employee's tortious act may fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business." *Kemezy v. Peters,* 622 N.E.2d 1296, 1298 (Ind.1993). Even an intentional criminal act may be deemed within the scope of employment if it originated in activities so closely associated with the employment relationship as to fall within its scope. *City of Anderson v. Weatherford,* 714 N.E.2d 181 (Ind.Ct.App.1999), *trans. denied.* Surely, the maintenance of discipline in the classroom is an important part of any teacher's duties, and thus must be viewed as furthering the employer's—the school's—business.

In summary, I am convinced that the complained-of acts were done in furtherance of Williamson's employer's business, and thus were committed within the scope of his employment. Accordingly, pursuant to IC § 34–13–3–5, Williamson cannot be sued in his personal capacity. I would affirm the grant of summary judgment in his favor.