Mable WALLACE, Appellant–Plaintiff,

v.

Harriet ROSEN and Indianapolis Public Schools, Appellees–Defendants.

No. 49A02–0106–CV–419.

Court of Appeals of Indiana.

March 22, 2002.

Elaine Parran Boyd, Lee, Burns & Cossell, LLP, Indianapolis, IN, Attorney for Appellant.

Kevin C. Schiferl, Julia Blackwell Gelinas, Allison S. Avery, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

KIRSCH, Judge.

Mable Wallace appeals the jury verdict in favor of Indianapolis Public Schools (IPS) and Harriet Rosen, a teacher for IPS. On appeal, Wallace raises the following issues:

I.  Whether the trial court erred in refusing to give her tendered jury instruction regarding battery.

II. Whether the trial court erred in instructing the jury regarding the defense of incurred risk.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1994, Rosen was a teacher at Northwest High School in Indianapolis. On April 22, 1994, the high school had a fire drill while classes were in session. The drill was not previously announced to the teachers and occurred just one week after a fire was extinguished in a bathroom near Rosen's classroom.

On the day the alarm sounded, Wallace was at the high school delivering homework to her daughter Lalaya. Because Wallace was recovering from foot surgery and Lalaya's class was on the second floor, Lalaya's boyfriend Eric Fuqua accompanied Wallace up the stairs. Wallace and Fuqua were near the top of the staircase when they saw Lalaya and began to speak with her. Jamie Arnold, a student who knew Lalaya and her mother, joined the conversation. The alarm then sounded and students began filing down the stairs while Wallace took a step or two up the stairs to the second floor landing.

In response to the alarm, Rosen escorted her class to the designated stairway and noticed three or four people talking together at the top of the stairway and blocking the students' exit. Rosen did not recognize any of the individuals but approached "telling everybody to move it." *Transcript* at 35. Wallace, with her back to Rosen, was unable to hear Rosen over the noise of the alarm and Rosen had to touch her on the back to get her attention. *Id.* at 259. Rosen then told Wallace,

"you've got to get moving because this is a fire drill." *Id.* 259.

At trial, Wallace testified that Rosen pushed her down the stairs. *Id.* at 128. Rosen denied pushing Wallace and testified that Wallace had not fallen, but rather had made her way down the stairs unassisted and without losing her balance. *Id.* at 265–66.

At the close of the trial, Wallace tendered an instruction concerning civil battery. Over Wallace's objection, the court refused to read the instruction to the jury.[1] IPS and Rosen tendered an instruction concerning the defense of incurred risk on the basis that Wallace had continued up the stairs after hearing the alarm, had stopped at the landing to talk, and had blocked the students' exit. Over Wallace's objection, the court gave the incurred risk instruction. The jury found in favor of IPS and Rosen, and Wallace now appeals.

## DISCUSSION AND DECISION

Wallace claims that the trial court erred both in refusing to give the tendered jury instruction concerning battery and in giving the instruction concerning incurred risk as a defense to a claim of negligence. Instruction of the jury is left to the sound discretion of the trial court. *Control Techniques, Inc. v. Johnson*, 737 N.E.2d 393, 400 (Ind.Ct.App.2000). Our review of a trial court's decisions is highly deferential, and we will not disturb the court's judgment absent an abuse of that discretion. *Id.*

A party is normally entitled to have a tendered instruction read to the jury. *Marshall v. Clark Equip. Co.*, 680 N.E.2d 1102, 1104 (Ind.Ct.App.1997),

---

1. Although the master commissioner was not willing to give an instruction on knowing or intentional battery, she was willing to give an instruction on battery arising from reckless disregard for Wallace's welfare. *Transcript* at 240. Wallace refused the court's offering, reiterating that she wanted the instruction read to the jury as tendered. *Id.*

*trans. denied* (1998); *Morris v. K–Mart, Inc.*, 621 N.E.2d 1147, 1148 (Ind.Ct.App. 1993), *trans. denied* (1994). In determining whether the trial court erroneously refused a tendered instruction, we consider: (1) whether the tendered instruction correctly states the law; (2) whether there is evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions. *Smock Materials Handling Co., Inc. v. Kerr,* 719 N.E.2d 396, 402 (Ind.Ct.App.1999); *Stamper v. Hyundai Motor Co.*, 699 N.E.2d 678, 688 (Ind.Ct.App.1998), *trans. denied.* An instruction is properly rejected if it would tend to mislead or confuse the jury. *Barnard v. Himes,* 719 N.E.2d 862, 868 (Ind. Ct.App.1999), *trans. denied.* Further, " '[e]ven if the instruction is a correct statement of the law, is supported by the evidence, and is not covered by the other instructions, we will not reverse unless the failure to give the instruction substantially and adversely affects the rights of the complaining party so as to quite likely have affected the result.' " *Id.* (quoting *Miller v. Ryan,* 706 N.E.2d 244, 248 (Ind. Ct.App.1999), *trans. denied* ).

### I. Battery Instruction

Wallace first argues that it was error for the trial court to refuse to give the jury the following tendered instruction pertaining to battery:

A battery is the knowing or intentional touching of one person by another in a rude, insolent, or angry manner.

Any touching, however slight, may constitute an assault and battery.

Also, a battery may be recklessly committed where one acts in reckless

disregard of the consequences, and the fact the person does not intend that the act shall result in an injury is immaterial.

*Appellant's Brief* at 7.

Wallace argues that the omission of the instruction was error because the instruction was an accurate statement of the law, was supported by the evidence, and was not covered by any other instruction read to the jury. *Id.* at 6. Appellees respond that the instruction was properly omitted because there was no evidence presented that supported a battery instruction. *Id.* at 3.

We agree with Appellees. The Indiana Pattern Jury Instruction for the intentional tort of civil battery is as follows: "A battery is the knowing or intentional touching of a person against [his] [her] will in a rude, insolent, or angry manner." 2 *Indiana Pattern Jury Instructions (Civil)* 31.03 (2d ed. Revised 2001).[2] Battery is an intentional tort. *Boruff v. Jesseph,* 576 N.E.2d 1297, 1300 (Ind.Ct.App.1991). In discussing intent, Professors Prosser and Keeton made the following comments:

In a loose and general sense, the meaning of 'intent' is easy to grasp. As Holmes observed, even a dog knows the difference between being tripped over and being kicked. This is also the key distinction between two major divisions of legal liability—negligence and intentional torts . . . .

[I]t is correct to tell the jury that, relying on circumstantial evidence, they may infer that the actor's state of mind was the same as a reasonable person's state of mind would have been. Thus, . . . the defendant on a bicycle who rides down a

---

**2.** The Indiana Pattern Jury Instructions are prepared under the auspices of the Indiana Judges Association and the Indiana Judicial Conference Criminal and Civil Instruction Committees. Although not formally approved for use, they are tacitly recognized by Indiana Trial Rule 51(E). *Winegeart v. State,* 665 N.E.2d 893, 905 (Ind.1996).

person in full view on a sidewalk where there is ample room to pass may learn that the factfinder (judge or jury) is unwilling to credit the statement, "I didn't mean to do it."

On the other hand, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. The line has to be drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the actor a substantial certainty.

The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although intending nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good.

W. PAGE KEETON et al., PROSSER AND KEETON ON THE LAW OF TORTS, § 8, at 33, 36–37 (5th ed. 1984) (footnotes omitted).

Wallace, Lalaya, and Fuqua testified that Rosen touched Wallace on the back causing her to fall down the stairs and injure herself. For battery to be an appropriate instruction, the evidence had to support an inference not only that Rosen intentionally touched Wallace, but that she did so in a rude, insolent, or angry manner, i.e., that she intended to invade Wallace's interests in a way that the law forbids.

Professors Prosser and Keeton also made the following observations about the intentional tort of battery and the character of the defendant's action:

[I]n a crowded world, a certain amount of personal contact is inevitable and must be accepted. *Absent expression to the contrary, consent is assumed to all those ordinary contacts which are customary and reasonably necessary to the common intercourse of life, such as a tap on the shoulder to attract attention,* a friendly grasp of the arm, or a casual jostling to make a passage....

The time and place, and the circumstances under which the act is done, will necessarily affect its unpermitted character, and so will the relations between the parties. A stranger is not to be expected to tolerate liberties which would be allowed by an intimate friend. But unless the defendant has special reason to believe that more or less will be permitted by the individual plaintiff, the test is what would be offensive to an ordinary person not unduly sensitive as to personal dignity.

KEETON et al., § 9, at 42 (emphasis added).

■ During the trial, Wallace gave the following testimony concerning the manner in which Rosen touched her:

Q [Rosen] took both hands and placed them on your shoulder blades?

A Not across my shoulder. She had her finger tips [sic] and my shoulder, and turned me around like, and moving it [sic].

Q Which way did she turn you?

A She turned me—I was going up when she turned me. She turned me towards the stairwells.

Q So, you're standing here, hands come on, you're turned. Are you turned this way towards the wall? Or this way towards the open stairs?

A Towards the open stairs.

Q And, in fact, your testimony is that she took her hands, both of them, placed them on your shoulders or approximately here.

A Um-hum. (affirmative response).

Q Turned you 180 degrees around?

A She didn't force turn me. But she put her hands there, and turned me and told me to move it.

Q And she did so 180 degrees?

A Not to 180 degrees, no.

Q Half that?

A Yeah, half that.

Q Okay, about 90. So now you're like this. Now where is Ms. Rosen?

A She's still standing up there.

. . .

Q What happened next, Ms. Wallace?

A That's when I slipped. I turned around—when she turned me around, that's when I slipped. Because one of my—my left foot that I had the surgical [sic] on, that's when I slipped.

*Transcript* at 126–28.

Viewed most favorably to the trial court's decision refusing the tendered instruction, the foregoing evidence indicates that Rosen placed her fingertips on Wallace's shoulder and turned her 90° toward the exit in the midst of a fire drill. The conditions on the stairway of Northwest High School during the fire drill were an example of Professors Prosser and Keeton's "crowded world." Individuals standing in the middle of a stairway during the fire drill could expect that a certain amount of personal contact would be inev-

itable. Rosen had a responsibility to her students to keep them moving in an orderly fashion down the stairs and out the door. Under these circumstances, Rosen's touching of Wallace's shoulder or back with her fingertips to get her attention over the noise of the alarm cannot be said to be a rude, insolent, or angry touching. Wallace has failed to show that the trial court abused its discretion in refusing the battery instruction.

Furthermore, even if an instruction on battery was appropriate, Wallace's inclusion of language that "a battery may be recklessly committed" created an instruction that was likely to mislead or confuse the jury under the facts of this case. In the comment section of the pattern instruction for battery, the Civil Instruction Committee ("Committee"), citing three cases, agrees that "a battery may be recklessly committed where one acts in reckless disregard of the consequences . . ." 2 *Indiana Pattern Jury Instructions (Civil)* 31.03, comments. However, these three cases represent a type of recklessness that reveals the actor's intent to commit the battery. *See Kline v. Kline,* 158 Ind. 602, 64 N.E. 9 (1902) (the defendant's intent to assault a woman and her children could be found in the defendant's actions of threatening to shoot them and of pouring kerosene and attempting to light a match in furtherance of the defendant's threat to burn down the house); *Mercer v. Corbin,* 117 Ind. 450, 20 N.E. 132 (1889) (the supreme court, ignoring the defendant's statement that he didn't mean to hit the plaintiff, found that the defendant committed assault and battery when he rode his bicycle over the plaintiff who was standing on one side of a fourteen-foot-wide sidewalk in broad daylight)[3]; *Reynolds v.*

---

**3.** The *Mercer* court cited to the following evidence where a willful wrong could be inferred

from recklessness: furious driving, taking unruly animals into crowds, carelessly laying

*Pierson,* 29 Ind.App. 273, 64 N.E. 484 (1902) ("horse play" in which the defendant jerked and pulled with sufficient force to throw the plaintiff off another's arm and injure him revealed a reckless disregard of the consequences and thus supplied grounds for inferring defendant's constructive intent and the willful act of battery).

The facts in this case can be distinguished from those cited by the Committee. Rosen's actions were clearly not intentional like the facts in *Kline,* nor can it be said that Rosen's touching arose from a recklessness or wanton disregard of human life and safety found in *Mercer.* Quite the contrary, the actions that Rosen took were intended to keep the student traffic flowing out of the building and away from any potential danger. Rosen's actions are reasonably interpreted as trying to prevent danger to human life and safety that was created by Wallace's presence at the top of the stairs. Furthermore, from the record before us it is clear that Rosen was not engaging in "horse play" like that found in *Reynolds.* Wallace and Rosen did not know each other before the fire drill. Any touching arose only in response to the fire drill and the attempt to facilitate a safe exit for staff and students from the building. The inclusion of the reckless instruction with the intentional tort of battery under the facts of this case would have allowed the jury to use a lesser standard to convict Rosen and IPS of battery.

We find that the inclusion of the "reckless" language in the battery instruction would have been misleading and made the instructions as a whole confusing to the jury.[4]

■ Finally, it cannot be said that Wallace's rights were substantially and adversely affected by the court's failure to give the battery instruction. There is a well-established " 'duty on the part of school personnel to exercise ordinary and reasonable care for the safety of children under their authority.' " *Mark v. Moser,* 746 N.E.2d 410, 414 (Ind.Ct.App.2001) (quoting *Beckett v. Clinton Prairie Sch. Corp.,* 504 N.E.2d 552, 554 (Ind.1987)). As a teacher, this duty of care fell on Rosen. A fire had been actually set in the bathroom on Rosen's floor less than a week before the fire alarm sounded. On April 22, 1994, with no prior knowledge whether the alarm signaled a drill or a fire, Rosen exercised ordinary and reasonable care when she tried to get the students to exit as quickly as possible. Finding Wallace and three others creating a bottleneck at the top of the staircase required Rosen to take quick action. It was necessary for Rosen to both raise her voice and touch Wallace's back to get her attention. When Wallace objected to being touched and did not move, it was also reasonable for Rosen to turn Wallace toward the stairs and tell

out poison for rats, want of caution towards drunken persons, and carelessly casting logs and the like upon highways. *Mercer v. Corbin,* 117 Ind. at 451, 20 N.E. at 132. The court also noted cases where intent was found from reckless actions in a case of manslaughter when a man shot a pistol and killed a boy he did not see, and in cases of assault and battery where a boy, in sport, threw mortar and accidentally hit and injured another child, and a boy aiming his arrow at a basket mistakenly hit the plaintiff. The court concluded that these cases were nothing more than a reflection of the general rule, "that

from recklessness and wanton disregard of human life and safety, malice and criminal intent may be inferred." *Id.* at 453, 20 N.E. at 133.

4. The inclusion of an intentional battery instruction also would have misled the jury because the court offered the instruction that contributory negligence was a defense to the claimed action. Wallace did not object to the inclusion of this instruction even though contributory negligence is not a defense to an intentional tort.

her to get moving. Failing to give the battery instruction was not error because, even if given, the facts of this case would not have supported a claim for intentional battery.[5]

## II. Defense of Incurred Risk Instruction

█ Wallace next argues that the trial court erred in giving a jury instruction concerning the defense of incurred risk. Indiana's Comparative Fault Act does not apply to governmental entities like IPS and its employees, therefore, tort claims against such defendants are subject to the common law principles of negligence. IC 34–51–2–2; *Hopper v. Carey*, 716 N.E.2d 566, 570 (Ind.Ct.App.1999), *trans. denied* (2000); *Hapner v. State*, 699 N.E.2d 1200, 1205 (Ind.Ct.App.1998). As a general rule under the Tort Claims Act, as at common law, both contributory negligence and incurred risk operate to bar a plaintiff's recovery against government actors. *Sauders v. County of Steuben*, 693 N.E.2d 16, 18 (Ind.1998); *Hopper*, 716 N.E.2d at 570; *Town of Highland v. Zerkel*, 659 N.E.2d 1113, 1120 (Ind.Ct.App.1995).

█ At the close of the evidence, the trial court instructed the jury on the defenses of contributory negligence and incurred risk.[6] The relationship between these two theories has been discussed in our courts for years. Some courts have deemed incurred risk to be merely "a 'species' of contributory negligence while oth-

ers have demanded that the defenses be kept separate and distinct." *Kroger Co. v. Haun*, 177 Ind.App. 403, 418, 379 N.E.2d 1004, 1013 (1978). Contributory negligence contemplates an objective standard for the determination of "whether a reasonable man would have so acted under similar circumstances" and is concerned with whether the acceptance of the risk was reasonable and justified in light of the possible benefit versus the risk. *Id.* at 409, 379 N.E.2d at 1008. Contributory negligence also involves conduct that is "careless" and presupposes a duty and breach thereof, but serves as an affirmative defense to prevent recovery by the plaintiff. *Id.*

█ By contrast, incurred risk demands a subjective analysis with inquiry into the particular actor's knowledge, is concerned with the voluntariness of a risk, and is blind as to reasonableness of risk acceptance. *Id.* Incurred risk also involves a mental state of "venturousness" and has been described as negating a duty and therefore precluding negligence. *Id.* Generally, the existence of incurred risk and contributory negligence are questions of fact for the jury. *Mauller v. City of Columbus*, 552 N.E.2d 500, 502 (Ind.Ct. App.1990); *Kroger*, 177 Ind.App. at 407, 379 N.E.2d at 1007. The definition of incurred risk includes the proposition that knowledge of a risk may be imputed where such a risk would have been "readily discernable by a reasonable and prudent man under like or similar circumstances." *Kro-*

---

5. Wallace also raises the issue of whether the trial court erred in failing to give the following tendered instruction pertaining to respondeat superior: "An employer is liable for assault and battery committed by an employee upon a third person when the act is done by authority of the employer, either express or implied, or when the act is done by the employee within the scope of employment." *Appellant's Brief* at 14. Because Wallace has not shown reversible error on the question of

omission of the tendered battery instruction and, as such, there can be no vicarious liability for IPS on that charge, we need not address the question of whether it was error to fail to give the respondeat superior instruction.

6. The instruction read to the jury on incurred risk tracked instruction number 5.43 of the Indiana Pattern Jury Instructions.

*ger*, 177 Ind.App. at 410, 379 N.E.2d at 1008.

Our court has discussed the differences between the two theories, but has concluded that the "importance of reconciling the two definitions becomes apparent only in those situations where incurred risk serves as a defense while contributory negligence does not." *Id.* at 418, 379 N.E.2d at 1013 "In a negligence action, both defenses are available to a defendant, and the failure to distinguish between the two is without substantive significance." *Id.* Because instructions were given concerning both contributory negligence and incurred risk and Wallace did not object to the giving of the contributory negligence instruction, the inclusion of the incurred risk instruction did not affect Wallace's substantive rights.

As previously noted, "Reversal based upon instructional error is warranted only when the trial court's instructions, *taken as a whole*, misstate the law or mislead the jury." *Michigan Mut. Ins. Co. v. Sports, Inc.*, 698 N.E.2d 834, 839 (Ind.Ct.App. 1998), *trans. denied* (citing *Koziol v. Vojvoda*, 662 N.E.2d 985, 991 (Ind.Ct.App. 1996)). The defenses of contributory negligence and incurred risk are both findings of fact for the jury. A finding by the jury that Wallace was even the slightest bit negligent would have resulted in a verdict for Rosen and IPS. Here, Wallace had a duty to exit the building as soon as possible upon hearing the fire alarm. The evidence revealed that she did not in fact leave but instead proceeded up the stairs to continue her conversation. We need not determine whether it was error to instruct the jury on incurred risk. The verdict would not have differed had the jury been properly instructed. Error, if any, in giving the incurred risk instruction did not prejudice the substantial rights of Wallace and therefore, reversal is not re-

quired. *Smock Materials*, 719 N.E.2d at 403.

### III.  Attorneys Fees

Finally, pursuant to Ind. Appellate Rule 66(E), IPS and Rosen seek to recover attorneys fees for this appeal, alleging that Wallace's appeal is frivolous. Our court will only assess appellate damages against an appellant who in bad faith maintains a wholly frivolous appeal. *Blue Valley Turf Farms, Inc. v. Realestate Mktg. and Dev., Inc.*, 424 N.E.2d 1088, 1091 (Ind.Ct.App.1981).

The Appellees correctly state that bad faith on appeal may be classified as "substantive" or "procedural." Substantive bad faith " 'implies the conscious doing of a wrong because of dishonest purpose or moral obliquity.' " *Catellier v. Depco, Inc.*, 696 N.E.2d 75, 79 (Ind.Ct. App.1998) (quoting *Watson v. Thibodeau*, 559 N.E.2d 1205, 1211 (Ind.Ct.App.1990)). Procedural bad faith " 'is present when a party flagrantly disregards the form and content requirements of the Rules of Appellate Procedure, omits and misstates relevant facts appearing in the record, and files briefs appearing to have been written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court.' " *Id.* Wallace's appeal possesses sufficient merit and is in sufficient compliance with the Appellate Rules to withstand such an award.

Affirmed.

SULLIVAN, J., concurs with separate opinion.

ROBB, J., concurs in part and concurs in result in part with separate opinion.

SULLIVAN, Judge, concurring.

I concur in the majority's determination that the trial court did not err in refusing

Wallace's battery instruction. I do so, however, upon different grounds.

Although, as quoted by the majority, Wallace testified that she slipped when touched by Rosen, during the same cross-examination she also testified as follows:

"Q Now were you pushed?

A And at that time ... [sic]

Q Let me ask you. Did you slip, or were you pushed?

A I was pushed. You can't help but slip when somebody pushes you. It's nothing to grab." Transcript at 127–128.

Additionally, the two other eye-witnesses, Wallace's daughter and the daughter's boy-friend, although perhaps not wholly objective, did testify that Rosen "grabbed" Wallace's arm or shoulder and "turned her around" (Tr. at 41–42, 91), and that when Wallace told Rosen she was a parent not a student, Rosen responded, "I don't care who you are," (Tr. at 91), telling Wallace "to move it," (Tr. at 42).

Although the evidence as to an arguable battery may be minimal at best, I am unwilling to state that as a matter of law, Rosen's touching was not rude, insolent, or angry. Given the fact that Rosen's touching was intentional, and despite the circumstances, it would not be wholly unreasonable for a jury to conclude that the scenario did not equate with the personal contact contemplated in Professors Prosser and Keeton's "crowded world."

In my view, and as thoroughly discussed by the majority, the trial court properly rejected the proffered instruction because the last portion, which instructed as to a "recklessly committed" battery, would have been misleading to the jury. The alleged battery here was either an intentional touching in a rude, insolent, or angry manner, or it was no battery at all. In this regard, I respectfully disagree that based upon case authority from a century and more ago,[7] a reckless act which results in a touching may constitute an intentional touching. A touching which occurs through recklessness on the part of the actor is simply inconsistent with a touching which is intentional on the part of the actor.

Under Part II, the majority holds that the error, if any, in giving Rosen's incurred risk instruction, was harmless. In doing so, the lead opinion states that "[a] finding by the jury that Wallace was even the slightest bit negligent would have resulted in a verdict for *Rosen and IPS.*" Op. at 200 (emphasis supplied). Judge Robb in her separate opinion states that "[b]ecause Wallace's cause of action was *against a school,* comparative negligence does not apply...." Op. at 204 (emphasis supplied). Both opinions in this regard are premised upon the conclusion that the suit falls under the Tort Claims Act. To the extent that the suit was brought against the school as a governmental enti-

---

7. In *Kline v. Kline,* 158 Ind. 602, 64 N.E. 9 (1902), there was no touching, and the court was considering the matter of an "assault" as an attempted battery rather than a battery. In *Mercer v. Corbin,* 117 Ind. 450, 20 N.E. 132 (1889), the court did indeed find that from a recklessly committed act which results in a touching, the requisite intent for battery may be inferred. In context, the court merely held that from a reckless act resulting in a touching, the requisite intent to cause the harm or injury may be inferred. (To the same effect is *Reynolds v. Pierson,* 29 Ind.App. 273, 64 N.E. 484 (1902)). *Mercer* did not go so far as to say that a recklessly committed act may constitute an intentional touching. One might argue that if civil liability may be found for a reckless touching as well as for an intentional or knowing touching, it is a distinction without a difference. Be that as it may, to the extent that the *Mercer* and *Reynolds* decisions may be read to equate reckless conduct with intentional conduct, I believe them to be mistaken.

ty and against Rosen as an employee of that entity, it is clear that the Tort Claims Act was applicable.

Wallace's complaint alleges that Rosen was in her capacity as a teacher at the time in question and was the agent of the school. It does not, however, specifically assert that Rosen's alleged assault and battery was committed within the scope of Rosen's employment. In separate counts, the complaint also alleged that IPS was negligent in the employment and continued employment of Rosen, and that the continued employment served to ratify the acts of Rosen. Thus viewing the complaint in the context of Ind.Code § 34–13–3–5 (Burns Code Ed. Supp.2001), proceeding both against Rosen individually and against IPS was not precluded. *See Bushong v. Williamson*, 760 N.E.2d 1090 (Ind. Ct.App.2001).[8]

Under the facts as they unfolded at trial, it seems that Rosen was clearly acting within the scope of her employment. See *Bushong, supra,* (acts of the teacher not clearly shown to be authorized or unauthorized and that therefore, the issue of scope of employment was for the trier of fact). Nevertheless, that scenario merely brings I.C. § 34–13–3–5(c)[9] into play. This provision of the statute requires the employer to pay a judgment against the employee when the acts of the latter were within the scope of employment. That burden falls upon the governmental entity whether or not the employee can or cannot be held personally liable.

Be that as it may, there was not a verdict against either or both of the defendants. For this reason, the various permutations of the Tort Claims Act in situations of this nature are not of determinative consequence.

Subject to the above observations, I otherwise concur.

ROBB, Judge, concurring in result in part with opinion.

I respectfully concur in the result reached by the majority as to the issue of the incurred risk instruction.

Wallace contends on appeal that the trial court erred in giving an instruction to the jury on the defense of incurred risk. I agree.

The trial court gave the following instruction over Wallace's objection:

A person incurs the risk of injury if she knew of a danger, understood the risk involved, and voluntarily exposed herself to such danger.

In deciding whether the plaintiff incurred the risk, you may consider the experience and understanding of the plaintiff; whether the plaintiff had reasonable opportunity to abandon the course of action; and whether a reasonable person would have abandoned the course of action.

If you decide that plaintiff incurred the risk of some or all the injuries claimed, then the plaintiff's conduct is negligent.

Appendix to Appellant's Brief at 39.

The affirmative defense of incurred risk requires evidence of a plaintiff's actual knowledge and appreciation of the specific risk involved and voluntary acceptance of that risk. *Kostidis v. General Cinema*

---

**8.** Insofar as Wallace's complaint alleges an assault and battery, it could be construed as an allegation of criminal conduct within the purview of IC. § 34–13–3–5(b) (under the current version of this statute this provision has been recodified as subsection (c)).

**9.** Under the current version of the statute, this provision has been recodified as subsection (d).

*Corp. of Indiana,* 754 N.E.2d 563, 571 (Ind.Ct.App.2001). One of the prongs for determining whether an instruction was erroneously given is whether there is evidence in the record to support giving the instruction. *See id.* at 570. In this case, I do not believe there was evidence to support giving the instruction.

Wallace testified that there was not a rail on the right side of the stairwell as she went up, only a rail in the middle of the stairs to her left. Tr. 103–04. She moved to the rail to ascend the stairs and when she got near the top, she saw her daughter and moved back to the right and the wall to talk with her. Then a bell (presumably the fire alarm) rang and students started coming down the stairs. Wallace said to her daughter, "Let me move out of the way before I get knocked down," and she moved up a couple of steps to the landing, where she stood against the wall. Tr. 104. I believe this evidence demonstrates that Wallace knew and appreciated the danger of falling or being otherwise injured if she stayed on the steps, away from the railing, with an ailing foot, and with students coming down the stairs. I do not believe this demonstrates any actual knowledge or appreciation on Wallace's part that there was a danger of her being injured by moving to a place where she thought she would be on steady ground and out of the way of the students. I also do not believe this demonstrates any knowledge or appreciation that someone would instruct her to move and physically turn her around and move her toward the steps. For this reason, I do not believe that there was any evidence in the record to support giving an instruction on incurred risk.

However, as the majority has noted, errors in instruction are harmless and do not require reversal where the verdict would have been no different had the jury been properly instructed. *Smock Materials*

*Handling Co. v. Kerr,* 719 N.E.2d 396, 402 (Ind.Ct.App.1999). Because Wallace's cause of action was against a school, comparative negligence does not apply, and any contributory negligence on Wallace's part would bar her recovery. If, in fact, the jury's verdict was based upon its assessment that Wallace had incurred the risk, the jury also would have undoubtedly found that Wallace's conduct constituted contributory negligence and the verdict would have been the same even if the incurred risk instruction had not been given. Under these circumstances, I agree that the result would not have differed if the erroneous instruction had not been given, and therefore, I concur in the result reached by the majority that reversal is not warranted.

In all other respects, I concur with the majority opinion.