Estate of Helen Moffitt **MUELLER,**
**Appellant–Respondent,**

v.

William **KARNS, Appellee–Claimant.**

No. 29A02–0702–CV–196.

Court of Appeals of Indiana.

Sept. 17, 2007.

Jack G. Hittle, Church, Church, Hittle & Antrim, Noblesville, IN, Attorney for Appellant.

E. Davis Coots, Elizabeth I. Van Tassel, Carmel, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-respondent Estate of Helen Moffitt Mueller (the Estate) appeals the trial court's judgment in favor of appellee-claimant William Karns on his claim against the Estate seeking payment for services he provided prior to Mueller's death. Specifically, the Estate argues that the trial court erroneously found that the parties executed a binding contract regarding Karns's compensation.

Finding that Karns's offer was never accepted, that even if there was a contract its enforcement is barred by the Statute of Frauds, and that Karns is entitled to quantum meruit compensation but failed to provide evidence supporting the valuation of his services apart from evidence that he has received between $2500 and $10,000 on past projects, we reverse the judgment of the trial court and remand with instructions to hold a hearing on the amount of compensation to which Karns is entitled, with a minimum of $2500 and a maximum of $25,000.

### FACTS

In 1998, the Conservatorship of Mueller (Conservatorship) entered into lease negotiations with Martin Marietta Materials (Martin) for the mining of sand, gravel, and other material on land owned by the Conservatorship. Lease negotiations were handled by Michael Antrim, the attorney for the Conservatorship. Sometime in 1998, Martin sent Antrim a proposed lease, which provided for a 4% royalty to be paid to the Conservatorship. Antrim sought advice from four different sources to help him determine the amount of royalties to which the Conservatorship was entitled.

Among the experts enlisted by Antrim was Karns, a consultant who had twenty-five years of relevant experience, was a

family friend to Mueller, and was familiar with the property. Sometime in or around October 1998, Antrim and Karns reviewed Martin's proposed lease, and both men made handwritten notations on the draft. With Karns's advice and consultation, Antrim continued negotiating the terms of the lease with Robert Furlong, Martin's representative. Ultimately, on May 27, 1999, the royalty negotiations concluded when Antrim and Furlong agreed that the Conservatorship would receive a 6% royalty, which would increase to 6.5% after ten years. Negotiations on other terms of the lease continued. Although Karns had assisted Antrim with multiple portions of the lease, his primary responsibility had been to determine the amount of royalties to which the Conservatorship was entitled.

On November 8, 1999, the co-conservators signed a proposed draft of the lease, which Antrim then sent to Furlong. Antrim's cover letter indicated that the lease was subject to "final review and approval by consultant, Bill Karns, satisfactory to the Co–Conservators in their sole discretion." Appellant's App. p. 291. Subsequently, the parties added a force majeure clause to the lease, which was executed with an effective date of January 1, 2000.

Antrim and Karns had never agreed upon a fee for Karns's services. It is unclear precisely when they first discussed the issue, but Antrim documented a telephone call with Karns on December 15, 1998, and his memo stated that Karns wanted a scholarship fund established in his wife's name

rather than payment to him. [Karns] suggested that on another matter he was paid $10,000 for a consultation. It's not so much on a time basis as much as for his experience.... He said something very small such as one-quarter of a cent per ton would be a long-term contribution to that scholarship fund.

*Id.* at 286. And in fact, Karns testified that "early on," he told Antrim that he "didn't expect anything" in the way of payment and that "it could be whatever [Antrim] thought was reasonable...." Tr. p. 95. At trial, when asked, "would you still be willing to leave it up to Mr. Antrim to come up with a reasonable fee," Karns replied, "Certainly. Because he's a reasonable person." *Id.* Antrim testified that he continually asked Karns to keep track of the time he spent working for the Conservatorship, but Karns did not and cannot make a rough estimate of the amount of time he spent on the job. *Id.* at 93–94, 149.

After receiving the executed draft of the lease in November 1999, Karns sent a letter to the Conservatorship on December 16, 1999 (the Letter), which states, in relevant part, as follows:

My consulting fee for the Mueller property is one cent ($.01) per ton for all minerals, clay, and topsoil extracted and sold from the Mueller farm. The term of this agreement will be for twenty (20) years starting January 1, 2000.

If minerals are still extracted and sold after 20 years the same rate per ton will prevail as long as minerals are extracted and sold.

The minimum annual fee will be $7500.00 per year.

\* \* \*

Upon my death the payments will be divided equally between my children....

Appellant's App. p. 259. Given Karns's estimate that there are 77.1 million tons of material to be excavated from the property, this fee proposal means that Karns would receive approximately $771,000 over the next two or more decades, without regard to how long he lives. Appellant's

Br. p. 10. In mid-January 2000, within three weeks of the receipt of the Letter, Antrim told Karns during a telephone call that the fee proposal was rejected. Neither party took further action until July 31, 2001, when Antrim sent Karns a letter stating, "Enclosed please find a check made payable to you in the amount of $25,000 which represents payment in full for all consultation services rendered to date in regard to the [Martin]/Mueller Lease negotiations." Appellant's App. p. 267. Karns did not cash the check.

Karns took no further action for four years. On April 28, 2005, Mueller died, and on June 7, 2005, Karns filed a claim against her Estate. Karns's claim states, in its entirety, that the Estate is indebted to him as follows:

> Consulting fee for lease negotiations on behalf of Deceased's conservatorship currently due in the amount of Thirty-Seven Thousand Dollars ($37,000), plus interest. Claimant is also entitled to annual payments based on production of aggregate product with a minimum of Seven Thousand Five Hundred Dollars ($7,500) per year.

Appellant's App. p. 10. Karns argued that the Letter constitutes a binding contract because Antrim failed to successfully reject Karns's offer; consequently, the Estate is bound to the Letter's terms. The trial court agreed. Following an October 17, 2006, bench trial, on January 9, 2006, the trial court found in Karns's favor. The Estate had requested that the trial court enter findings of fact and conclusions of law, and the relevant findings and conclusions are as follows:

> 9. Antrim requested and Karns provided his fee for consulting services by Karns'[s] letter dated December 16, 1999....

> * * *

> 12. No written response was ever made to [the Letter]. The Conservatorship on January 10, 2000[,] petitioned this Court, and obtained this Court's Order, "authorizing the payment of a reasonable commission to William R. Karns[.]"

> * * *

> 15. The Court approved a percentage royalty fee for counsel for the Conservatorship ... in the amount of Twenty-Five (25%) Percent of the royalty payments to be received that are in excess of the original amount of royalty payments offered by [Martin], i.e., Four (4%) Percent versus Six (6%) Percent of average net selling price....

> ### CONCLUSIONS OF LAW
> * * *

> B. ... [T]he Court concludes a contract existed based upon the December 16, 1999[,] letter and its terms because the Conservatorship, after the date of the letter, had the opportunity to reject the services up until January 1, 2000[,] when the Lease Agreement was signed, and because the Conservatorship placed in Karns the final review and approval of the Lease Agreement which was to be satisfactory to the Co-Conservators in their sole discretion. The Conservatorship continues to accept the benefit of Karns'[s] work after receipt of the December 16, 1999 letter.

> C. The amount of consulting fees due Karns presently, pursuant to the Agreement, is $52,500.00, which is the contract minimum of $7,500.00 per year for calendar years 2000 through 2006.

> D. Karns is entitled to the legal rate of interest at Eight (8%) Percent on the liquidated sum such interest in the total amount of $13,100.00.

E. From and after the date of the Court's judgment, Karns is entitled to a payment of consulting fees in the amount of One Cent (.01) per ton of all materials removed from the real estate for the remaining term of the Lease Agreement, or $7,500.00 per year, whichever sum is greater.

F. Should the Lease Agreement be renewed or extended, Karns is entitled to payment in the amount of One Cent (.01) per ton throughout the term of any renewal or lease extension.

G. Costs are assessed against the Estate.

*Id.* at 6–9 (internal citations omitted). The Estate now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

When, as here, a trial court has entered findings of fact and conclusions of law pursuant to a party's request, we engage in a two-tiered standard of review. We must first determine whether the evidence supports the findings of fact and then whether the findings support the judgment. We will not reverse the trial court's findings and judgment unless they are clearly erroneous. Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences from the evidence to support them. The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. In making these determinations, we will neither reweigh the evidence nor judge witness credibility, considering only the evidence favorable to the judgment and all reasonable inferences therefrom. *Fairway Developers, Inc. v. Marcum,* 832 N.E.2d 581, 583–84 (Ind.Ct.App.2005), *trans. denied.*

While we defer substantially to findings of fact, we do not do so for conclusions of law. *Hay v. Baumgartner,* 870 N.E.2d

568, 571 (Ind.Ct.App.2007). We apply a de novo standard of review to conclusions of law and owe no deference to the trial court's determination of such questions. *Id.*

### II. Contract–Based Theory

The Estate argues that the trial court erroneously concluded that the Letter constituted a valid and binding contract. The existence of a contract is question of law. *Batchelor v. Batchelor,* 853 N.E.2d 162, 165 (Ind.Ct.App.2006). The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds of the contracting parties. *Id.* We will assume that the Letter constitutes an offer and will focus on whether the remaining three requirements have been met.

Karns argues that the Conservatorship accepted his offer by failing to respond to it—i.e., by remaining silent. Initially, we note that Antrim testified that he orally rejected Karns's offer in a telephone call that took place approximately three weeks after the Letter had been received. Appellant's App. p. 179–80. Karns did not specifically recall the phone call but testified that it was "possible" that it had taken place as described by Antrim. *Id.* at 122. Inasmuch as the undisputed evidence in the record establishes that Antrim rejected the offer during a phone call, we must consider whether Antrim was required to reject the offer in writing.

The Restatement (Second) of Contracts includes the following section relating to acceptance by silence:

(1) Where an offeree fails to reply to an offer, his silence and inaction operate as an acceptance in the following cases only:

(a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and rea-

son to know that they were offered with the expectation of compensation.

(b) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.

(c) Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.

Restatement (Second) of Contracts § 69(1). Here, Karns did not tell the Conservatorship that it could manifest acceptance of his offer by remaining silent, nor did he provide a clear and timely mechanism for rejecting the offer or his services. Moreover, there is no reason, based on the parties' previous dealings, that the Conservatorship was required to notify Karns explicitly that it did not intend to accept the offer.

Consequently, the only possible way in which the Conservatorship's silence constituted acceptance was if, following Karns's offer, it accepted Karns's services "with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation." *Id.* By the time Karns sent the Letter, however, he had *already performed all services.* Appellant's App. p. 115, 177. At that time, the Lease negotiations were complete and no further work was done on the Lease except to date and execute it. The Conservatorship could not have rejected his services after the fact. Karns insists that he continued to review monthly reports four years after the Letter was sent and the Lease was executed, but this claim is disingenuous at best. In fact, in June 2004, Karns reviewed reports *dated* January 2000 to June 2004 for the *sole purpose of calculating his request for a fee.* *Id.* at 261. Under these circumstances, we cannot conclude that the Conservatorship could have rejected Karns's services at the time it received the Letter. Consequently, the trial court erroneously concluded that the Conservatorship's failure to reject Karns's proposal in writing constituted an acceptance of the offer. Inasmuch as there was no valid acceptance of Karns's offer, therefore, the trial court erroneously concluded that the Letter constituted a contract.

Even if the Letter were a valid and binding contract, however, we note that the Statute of Frauds would prohibit it from being enforced. *See Schuler v. Graf,* 862 N.E.2d 708, 712 (Ind.Ct.App.2007) (noting that the Statute of Frauds "does not govern the formation of a contract but only the enforceability of contracts that have been formed"). The Statute of Frauds provides that a person may not bring an action involving any contract that cannot be performed within one year from the making of the agreement "unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or the party's authorized agent...." Ind.Code § 32–21–1–1(b)(5).

Here, the Letter explicitly provided that "[t]he term of this agreement will be for twenty (20) years starting January 1, 2000." Appellant's App. p. 259. Thus, the would-be contract could not have been performed within one year, bringing it under the purview of the Statute of Frauds. The Letter is not signed by an agent for the Conservatorship—in fact, it is not even signed by Karns. Consequently, even if the Letter constituted a contract, the Statute of Frauds would prevent its enforce-

ment. Thus, we find that the trial court erroneously enforced the Letter as a binding contract against the Estate.

### III. Quantum Meruit

■ The Letter's non-contractual status notwithstanding, Karns is undisputedly entitled to reasonable compensation for the services he provided to the Conservatorship. Neither Antrim, the Conservatorship, nor the Estate have ever denied Karns's right to the reasonable value of his services.

■ In the absence of a contract, a party may recover under the equitable theory of quantum meruit, pursuant to which the party may be permitted to recover the reasonable value of services rendered just as if there had been a true contract. *Troutwine Estates Dev. Co., LLC v. Comsub Design and Eng'g, Inc.,* 854 N.E.2d 890, 897 (Ind.Ct.App.2006), *trans. denied.* To be entitled to recover under a quantum meruit theory, the party must establish that a benefit was rendered to the other party at the express or implied request of that party, that allowing the other party to retain the benefit without paying for it would be unjust, and that the party seeking recovery expected payment for his services. *Id.* Here, we find that Karns has met his burden of establishing that he is entitled to a quantum meruit recovery.

■ The next issue, therefore, is the amount of compensation to which Karns is entitled. The beginning and end of Karns's argument regarding the fees to which he is entitled is the Letter. He

directs our attention to *Troutwine,* in which a panel of this court concluded that an engineering firm was entitled to quantum meruit compensation and that the value of the firm's services should be calculated based on its unpaid invoices. 854 N.E.2d at 896. The Letter, however, is merely Karns's bald claim regarding the amount to which he is entitled. He offers no invoices, time sheets, or calculations regarding his fees. Consequently, *Troutwine* is of no help to Karns.

■ He also offered no expert evidence in support of his claim that, for sporadic work spread over approximately sixteen months, he is entitled to decades of compensation that will ultimately total over $750,000. Two of Karns's witnesses testified that they had never heard of a consultant in this industry charging a percentage fee, as sought by Karns. Appellant's App. p. 148, 275. Karns offered evidence regarding the amount and method of compensation received by the Co–Conservators and the Conservatorship's attorney.[1] We find, however, that such evidence in no way illuminates the amount to which Karns, a consultant in Lease negotiations for the Conservatorship, is entitled to receive for his services.

Karns testified that he had traditionally charged between $200 and $250 per hour, with average fees totaling $2500 per project. *Id.* at 105. He also testified, however, that he did not keep track of the amount of time he spent on the lease negotiations and that he could not provide a rough estimate thereof. He told Antrim that there was one prior project for which

---

**1.** As Antrim observes, although he provided legal services during the lease negotiations for a contingency fee tied to the amount of royalties received under the lease, unlike Karns's proposal, Antrim's fee agreement was in writing and signed by all parties, specifically approved by the court, and wholly contingent— i.e., Antrim would have received no fee if royalty payments were never made. More-

over, the scope of services provided by Antrim to the Conservatorship is significantly broader than the services provided by Karns. Thus, neither the structure of Antrim's fee agreement with the Conservatorship nor the amount of fees to be received by his law firm are in any way relevant to the reasonable value of Karns's services.

he had charged $10,000. *Id.* at 286. Thus, the only evidence in the record regarding Karns's compensation establishes that, on prior projects, he received between $2500 and $10,000 for his services. We are also mindful, however, of the fact that the Conservatorship offered Karns $25,000 for his services, which establishes that the co-conservators believed $25,000 to be a reasonable valuation thereof. We remand, therefore, with instructions to hold a hearing on the amount of compensation to which Karns is entitled, with a minimum of $2500 and a maximum of $25,000.

Finally, the trial court awarded prejudgment interest to Karns. The *Troutwine* court found that an award of prejudgment interest may be proper when the underlying judgment rests on a theory of quantum meruit rather than the terms of a contract. 854 N.E.2d at 904. Such an award is warranted if the amount of the claim rests upon a simple calculation and if the factfinder need not exercise its judgment to assess the amount of damages. *Id.* Here, clearly, there is no simple calculation to be made. The parties are hundreds of thousands of dollars apart in their respective positions regarding the value of Karns's services. There is no contract upon which we can rely to ascertain the amount owed to Karns. Consequently, we find that an award of prejudgment interest is not warranted under these circumstances.

The judgment of the trial court is reversed and remanded with instructions to hold a hearing on the amount of compensation to which Karns is entitled, with a minimum of $2500 and a maximum of $25,000.

BAILEY, J., and VAIDIK, J., concur.