**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 29 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICK STERN**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**THOMAS A. PASTORE**
Thomas Pastore, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STANDARD COATING SERVICE, INC., | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1109-CT-922 |
| | ) | |
| WALSH CONSTRUCTION COMPANY, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather A. Welch, Judge
Cause No. 49D12-1005-CT-23989

**March 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Standard Coating Service, Inc. ("Standard") appeals from the trial court's order granting Walsh Construction Company's ("Walsh") motion for summary judgment on Standard's claims for breach of contract and for damages as a third-party beneficiary to a contract between Walsh and the City of Indianapolis ("the City").

We affirm.

**Issue**

Standard presents two issues for our review, which we consolidate and restate as whether the trial court erred when it granted summary judgment in favor of Walsh on Standard's claims.

**Facts and Procedural History**

Walsh provides prime contracting services on, among others, large public works projects. Standard provides painting, coating, and waterproofing services.

In late 2009, the City's Department of Public Works ("DPW") solicited bids for Project BE-28-002A, Wet Weather Secondary Treatment Expansion, Belmont Advanced Wastewater Treatment (AWT) Facility ("the Project"). (Walsh App. 14.) Walsh planned to submit a bid to serve as prime contractor on the Project.

Prime contractors for such projects, which draw money from the Clean Water and Drinking Water State Revolving Fund, are often required to seek out as subcontractors businesses that have been certified as Minority Business Enterprises ("MBEs") and Women's Business Enterprises ("WBEs"); such was the case here. To that end, on December 4, 2009,

Walsh placed a classified ad in the Indianapolis Star newspaper and on the newspaper's website seeking bids from certified MBEs and WBEs. Walsh also directly contacted a number of businesses certified as MBEs and WBEs.

Among the MBEs that submitted a bid to Walsh was Standard. On December 8, 2009, Standard submitted a bid to perform waterproofing, water repellent, and coating work for $1,759,132.00. (Standard App. 33-34; Walsh App. 11-12, 44.)

On December 10, 2009, Walsh submitted its bid to the city, in which it offered to serve as the prime contractor on the Project for a total cost of $53,600,000. (Walsh. App. 32-33.) Along with its bid, Walsh included U.S. Environmental Protection Agency ("EPA") forms 6100-3 and 6100-4. The EPA uses these forms to identify MBEs and WBEs that a prime contractor has engaged as subcontractors. The forms Walsh submitted to the City identified Standard as a provider of waterproofing, water repellents, and coating services.

On January 4, 2010, Patrick Stern ("Stern"), counsel for Standard, sent a letter to Walsh observing that Walsh was the lowest bidder on the Project and that Walsh had submitted with the bid EPA forms that designated Standard as providing waterproofing, water repellent, and coating on the Project. Stern opined that it seemed likely that the City would engage Walsh as prime contractor sometime in the middle of January 2010, and went on to request that Walsh contact Standard to arrange for the completion of a purchase order so that Standard could start work on the project. At some point, Walsh decided not to use Standard's services and selected a different subcontractor for the project.

On January 13, 2010, Stern appeared on Standard's behalf at a meeting of the City's

3

Commission of Public Works ("the Commission") to request that the City delay approval of Walsh's bid on the Project. Stern told the Commission that he had learned that day that Walsh did not intend to use Standard's services. He went on to note that EPA form 6100-4 requires the prime contractor to designate its subcontractors under penalty of perjury, and opined that Walsh's decision to use someone other than Standard should have raised concerns with the Commission regarding Walsh's claimed proportions of MBE and WBE use on the Project. After hearing from representatives of Walsh, who confirmed that they would not use Standard on the Project, and from DPW staff, the Commission went on to approve Walsh's bid.

On March 1, 2010, the City and Walsh entered into an agreement designating Walsh as the prime contractor for the Project.

On May 28, 2010, Standard filed suit against Walsh, alleging breach of contract and seeking damages as a third-party beneficiary of Walsh's agreement with the City. After several enlargements of time, Walsh answered the complaint on August 30, 2010.

On March 15, 2011, Walsh moved for summary judgment, seeking dismissal of the suit. After the trial court granted an enlargement of time in which to respond to the summary judgment motion, Standard filed its response on May 16, 2011. On July 14, 2011, Walsh replied to Standard and moved to strike numerous paragraphs of the affidavit of Arun Das ("Das"), Standard's President, which Standard submitted in support of its opposition to the summary judgment motion.

On July 18, 2011, the trial court conducted oral argument on the motions and granted

4

Standard additional time in which to respond to Walsh's motion to strike certain of Standard's designated materials. Standard filed its response on July 27, 2011, and further moved to strike certain materials Walsh had designated in support of its motion for summary judgment and in its reply to Standard.

On August 18, 2011, the trial court granted Walsh's motion to strike, denied Standard's motion to strike, and went on to grant summary judgment in favor of Walsh.

This appeal followed.

## Discussion and Decision

### Standard of Review

Standard appeals the trial court's order granting summary judgment to Walsh. We review a summary judgment order de novo, Murphy v. Curtis, 930 N.E.2d 1228, 1232 (Ind. Ct. App. 2010), trans. denied, and we are bound by the same standard as the trial court. Coca-Cola Co. v. Babyback's Intern., Inc., 841 N.E.2d 557, 561 (Ind. 2006). Summary judgment is appropriate only where "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We consider only those materials the parties designated in support of their submissions to the trial court. Gunkel v. Renovations, Inc., 822 N.E.2d 150, 152 (Ind. 2005). We construe all factual inferences in favor of the non-movant, and likewise resolve any question as to the existence of a material issue in the non-movant's favor. Murphy, 930 N.E.2d at 1228.

The moving party bears the burden of making a prima facie showing that there is no

genuine issue of material fact and that it is entitled to judgment as a matter of law. <u>Dreaded, Inc. v. St. Paul Guardian Ins. Co.</u>, 904 N.E.2d 1267, 1270 (Ind. 2009). Once the movant satisfies that burden, the burden shifts to the non-movant to designate and produce evidence showing the existence of a genuine issue of material fact. <u>Id.</u> We may affirm a grant of summary judgment on any legal basis supported by the materials submitted to the trial court. <u>Melton v. Ousley</u>, 925 N.E.2d 430, 437 (Ind. Ct. App. 2010).

*Standard's Breach of Contract Claim*

Standard first contends that the trial court erred because it improperly concluded that there was no contract between it and Walsh. Whether a contract exists is a question of law. <u>Fiederlein v. Boutselis</u>, 952 N.E.2d 847, 856 (Ind. Ct. App. 2011). The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds between the contracting parties "on all essential elements or terms" of the transaction. <u>Id.</u> (quoting <u>DiMizio v. Romo</u>, 756 N.E.2d 1018, 1022 (Ind. Ct. App. 2001) (quotation marks and citations omitted), <u>trans. denied</u>). "[A] meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract." <u>Ochoa v. Ford</u>, 641 N.E.2d 1042, 1044 (Ind. Ct. App. 1994). Whether the parties intended to contract is a question of fact "to be determined from all the circumstances." <u>Id.</u>

Walsh concedes that Standard's bid was an offer for waterproofing, water repellent, and coating services on the Project. Thus, we turn to whether Walsh accepted Standard's offer. On this point, Standard contends that while Walsh did not communicate directly its acceptance of Standard's offer, Walsh nonetheless accepted Standard's offer by naming

6

Standard in the EPA forms that accompanied Walsh's bid to the City.

This court has previously addressed a situation in which an offeror sought to bind a party that did not communicate acceptance of an offer in Mueller v. Karns, 873 N.E.2d 652 (Ind. Ct. App. 2007). In Mueller, Karns provided consulting services and later extended an offer by letter setting forth payment terms, which the offeree conservatorship rejected in a telephone conversation one week after Karns's letter's designated start date for the agreement. Id. at 655-56. Karns argued, and the trial court agreed, that the conservatorship had accepted Karns's offer by remaining silent until after the designated effective date. Id. at 656. We reversed, observing that "Karns did not tell the Conservatorship that it could manifest acceptance … by remaining silent, nor did he provide a clear and timely mechanism for rejecting the offer or his services," and that, indeed, Karns had already rendered his services before tendering the letter. Id. at 658.

In reaching our decision in Mueller, we relied upon the Restatement (Second) of Contracts, which states in relevant part:

> Where an offeree fails to reply to an offer, his silence and inaction operate as an acceptance in the following cases only:
>
> (a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation.
>
> (b) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.
>
> (c) Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.

7

Restatement (Second) of Contracts § 69(1).

Here, Standard submitted an offer to Walsh in the form of a subcontractor's bid.[1] Walsh in turn submitted its bid to the City, in which it included two EPA forms that named Standard as an MBE with whom Walsh expected to do business in the event the City accepted the bid. Walsh's bid to the City included three statements that "[n]o contracts have been made at this time, however, see attached Bidders List for subcontractors which we have acquired quotes from." (Walsh App. 99, 100.) It is unclear whether Walsh informed Standard directly that it would not accept Standard's bid before the City approved Walsh's bid at the Commission meeting on January 13, 2010. It is clear, however, that Standard was aware before the meeting began that Walsh had decided not to use Standard's services, as Stern informed the Commission that it was Walsh's decision that prompted his appearance before the Commission to recommend that it delay acceptance of Walsh's bid.

As in Mueller, Walsh responded to Standard first with silence, and then rejection. Neither Standard nor Walsh designated any evidentiary matter that would give rise to an inference that Standard informed Walsh that Walsh's silence would amount to acceptance. Cf. Restatement (Second) of Contracts § 69(1)(b). Thus, we cannot conclude that Walsh's silence in response to Standard's offer gives rise to an inference that Walsh's silence amounted to acceptance of Standard's bid.

Nor does the concept underlying subsection 69(1)(a) of the Restatement—that an offer

---

[1] Ordinarily, submission of a bid is not the same as an offer to contract. See infra. Walsh's brief on appeal appears to concede that the bid was an offer, and we therefore accept this characterization for purposes of rendering an opinion in this case.

8

is accepted when the offeree "takes the benefit of services" after having an opportunity to reject them and knowing that the offeror expects payment for those services—avail Standard. A bid is ordinarily, at most, "an offer creating the power of acceptance." I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co., 695 N.E.2d 1030, 1035 (Ind. Ct. App. 1998), trans. denied. Bids are "often described as a 'preliminary negotiation'" and … a purchase order from a bid's recipient "usually constitutes an offer." Id. (quoting 1 ARTHUR L. CORBIN, A COMPREHENSIVE TREATISE ON THE WORKING RULES OF CONTRACT LAW 22 (1963)).

The only evidentiary material designated to the trial court that provides any of the terms of Standard's bid to Walsh are EPA form 6100-3 and Das's affidavit, which specify the types of services Standard offered to provide and the price, but nothing else.[2] Further, according to Das's affidavit, Standard requested a purchase order from Walsh in anticipation of beginning work on the Project, but Walsh never provided one. At most, Standard's bid amounted to an offer that was not accepted in the manner specified by Standard—the submission of a purchase order.[3] Thus, we cannot conclude that Standard's bid amounted to anything other than an offer, and indeed, we question whether the designated materials amount even to that.

Nor can we conclude that Walsh accepted the benefit of Standard's services as

---

[2] Das's affidavit indicates that Standard submitted a copy of the bid along with its complaint. While we find the complaint in Standard's appendix, we find no copy of the bid in any of the materials submitted to the trial court or to this court.

[3] Because Walsh in its appellee brief appears to concede that Standard's bid constituted an offer, we do not reach the question of whether Standard's bid was an offer giving rise to the power of acceptance, or merely a bid as contemplated in I.C.C., supra.

contemplated by Restatement subsection 69(1)(a). Standard contends that it is entitled to damages for Walsh's breach when Walsh refused to use Standard's services on the Project. Yet Standard provided no services in this regard. Nor is there any evidence tending to give rise to an inference that Walsh accepted Standard's services in the form of a bid for which Walsh would have had reason to know Standard expected compensation for the bid itself. This is, again, unlike Mueller, where Karns provided consulting services before reaching an agreement on his compensation for those services. Here, there is no evidence that Standard provided any compensable service to Walsh, nor does Standard contend that its bid was such a service.

Simply put, Standard, having been frustrated in its efforts to obtain work on the Project as a subcontractor to Walsh, seeks recovery on a breach of contract claim by insisting that a prime contractor's communication of a subcontractor's offer in a bid amounts to acceptance of that offer. We decline to reach Standard's desired conclusion. The trial court did not err when it granted Walsh's motion for summary judgment on Standard's breach of contract claim.

### Standard's Third-Party Beneficiary Claim

Standard also seeks recovery as a third-party beneficiary of the agreement between the City and Walsh, a claim the trial court also dismissed upon summary judgment.

A third-party beneficiary may directly enforce a contract between other parties. Eckman v. Green, 869 N.E.2d 493, 496 (Ind. Ct. App. 2007), trans. denied. To do so, the claimed third-party beneficiary must show that 1) the parties to the contract clearly intended

10

to benefit the third-party claimant, 2) a duty was imposed upon one of the contracting parties favoring the third party, and 3) performance of the contract terms is necessary to render to the beneficiary the direct benefit intended by the contracting parties. Id. The "controlling factor" in a determination of whether a third party is a beneficiary of a contract is "[t]he intent of the parties to benefit the third party," which may be shown either by naming the third party or by other evidence. R.R. Donnelley & Sons Co. v. North Texas Steel Co., 752 N.E.2d 112, 122 (Ind. Ct. App. 2001), trans. denied.

Here, the City and Walsh entered into the agreement for Walsh's services as prime contractor on the Project on March 1, 2010. This was nearly two months after Walsh communicated to Standard that it had rejected its bid and the Commission meeting at which Walsh announced this to the City. Standard acknowledged this rejection when Stern told the Commission that he was present at the meeting on Standard's behalf because Walsh had decided not to engage Standard for the Project. Standard's appearance before the Commission in turn made the City aware of Standard's claims, which the City apparently disregarded in deciding to approve Walsh's bid. Moreover, the agreement between the City and Walsh includes Provision 6.11, which states, "[a]ll Work performed by Subcontractors shall be pursuant to an appropriate agreement between [Walsh] and the Subcontractor which specifically binds the Subcontractor to these General Conditions and the applicable terms and conditions of all other Contract Documents." (Walsh App. 19.) There is no evidence that Walsh and Standard entered into any such agreement.

Thus, the designated materials show that Standard submitted a bid, some portion of

11

which Walsh included in its proposal to the City on December 10, 2009, but later rejected in January 2010. Standard acknowledged that rejection through its subsequent actions, including its appearance before the Commission on January 13, 2010. Walsh did not engage Standard in an agreement contemplated by Provision 6.11 of the contract between Walsh and the City. Even drawing all inferences in Standard's favor, there is no material issue with respect to Standard's claim that it was a third-party beneficiary to the contract between Walsh and the City. The designated materials do not give rise to an inference that Walsh and the City intended to make Standard a third-party beneficiary to their agreement. The trial court therefore did not err when it concluded that Walsh was entitled to summary judgment on Standard's third-party beneficiary claim.

### Conclusion

There is no material issue as to whether Walsh breached a contract between itself and Standard when it rejected Standard's bid on the Project. Nor is there a material issue as to whether Standard was a third-party beneficiary to the contract between Walsh and the City. Thus, the trial court did not err when it granted summary judgment to Walsh and against Standard.

Affirmed.

BAKER, J., and DARDEN, J., concur.