**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 20 2012, 8:49 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**PATRICK B. McEUEN**
Rhame & Elwood
Portage, Indiana

ATTORNEY FOR APPELLEE:

**RICHARD N. SHAPIRO**
Law Office of Richard N. Shapiro, P.C.
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| PAULETTE PETKOVICH, ET AL, | ) |
| | ) |
| Appellants-Defendants, | ) |
| | ) |
| vs. | ) No. 64A03-1203-MF-102 |
| | ) |
| PRIME CONTRACTORS CO., INC., | ) |
| | ) |
| Appellee-Plaintiff. | ) |
| | ) |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable William E. Alexa, Judge
Cause No. 64D02-0901-MF-686

**November 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Paulette and Nancy Petkovich (collectively "Petkovich") appeal the trial court's decision to foreclose on Prime Contractors Company, Inc.'s ("Prime") mechanic's lien on their home and award attorney's fees to Prime. Petkovich contends that Prime did not complete the contract at issue, the trial court erred in setting the priority of the various liens on the home, and the attorney's fees awarded to Prime were excessive. Prime contends that it should also be awarded appellate attorney's fees for defending this appeal. We find that Prime did complete the contract and the attorney's fees awarded to Prime were not excessive. We also find that Prime is not entitled to appellate attorney's fees. However, the trial court did err in setting the priority of the various liens on the home. We therefore affirm in part, reverse in part, and remand.

**Facts and Procedural History**

On December 23, 2007, an oak tree was uprooted during an ice and wind storm and fell on the Petkovich's Valparaiso home, breaking through the roof. On the advice of the insurance company, Petkovich contacted a contractor to secure the home and remove the tree before the insurance adjuster came to the house. Several days later, Petkovich met with Prime to discuss the cost of repairing the home. Prime estimated the damages to be $84,773.40 on January 3, 2008, and a few days later, Petkovich signed the proposal outlining the work to be completed. Plaintiff's Ex. 1.

On January 20, 2008, before any work began and before receiving an estimate from the insurance adjuster, Prime increased the proposal by $55,295.00 for damage to the basement that resulted from a rain storm that took place before the roof was secured.

Prime did not start work until after the insurance adjuster, Calvin Coley, visited the house and estimated the loss to be $153,781.79 in late January 2008. Also in January, Prime loaned a total of $14,200.00 to Nancy and Paulette individually, an amount that was paid out of the initial insurance payment of $153,781.79.

After beginning work, Prime increased its proposal again by $13,904.57 on February 10, 2008. This increase included costs for demolition, moving contents, and placing the home back in its pre-damaged condition; all of these charges were mentioned to Coley, but they were not noted in his final estimate. *Id.* Prime walked off the job site in early March 2008 before work was completed because Prime contends there was not enough money to finish the job due to upgrades in repairs requested by Petkovich, changes in orders, and loans made to Petkovich. Prime contends that it completed approximately $100,000.00 worth of work when it left the job site, but Coley testified that he could only account for $51,402.37 in completed work. Tr. p. 225-26.

Prime had Petkovich sign an "extras contract" on March 26, 2008, for $57,765.40 in add-ons that were not covered by the insurance estimate in order to resume work. The contract stated that "THIS PROPOSAL MUST BE SIGNED IN ORDER TO CONTINUE JOB SITE." Plaintiff's Ex. 6. The contract was signed by both Petkovich and Prime. After the contract was signed, Prime resumed work only to finish the roof before walking off the job site for good. Tr. p. 280-81.

Prime recorded a mechanic's lien in Porter County on April 9, 2008, against Petkovich's property in the amount of $75,760.05. This reflected what Prime felt it was still owed on the project, including payments that Prime made that were not included

3

under the original insurance contract or the extras contract, such as $8500 for appliances, $2000 for windows, $9500 for kitchen cabinets, over $25,000 for other multiple upgrades, and $25,000 for change-order requests. *Id.* at 24-26, 273-74. Nine months later, Prime filed a complaint to foreclose the mechanic's lien, naming as defendants Petkovich and those who had claims, judgments, or liens on the property, as revealed by the public records of Porter County. Fifteen months later, Prime amended its complaint to add as a defendant Household Finance Corporation III, the mortgage company with a lien on the house that was recorded on September 20, 1999. The trial court entered an Order on Priority in May 2010, listing Prime's mechanic's lien third, subordinate only to a default judgment in favor of Chicago Patrolmens Federal Credit Union and a judgment in favor of Gerald Lambert; Prime's mechanic's lien was not subordinate to the 1999 mortgage. Appellant's App. p. 42.

A bench trial was held, and three months later, the trial court entered findings and ordered the mechanic's lien foreclosed. Judgment was entered in favor of Prime, but not for the full amount of the mechanic's lien – instead, judgment was entered for $31,080.67. The trial court also ordered a sheriff's sale of the property. Petkovich filed a motion to correct errors, which was denied. Prime filed an affidavit seeking attorney's fees in the amount of $36,489.75, but the trial court awarded Prime only $27,543.75.

Petkovich now appeals.

**Discussion and Decision**

Petkovich makes four arguments on appeal: (1) the trial court erred in finding that Prime completed the contract; (2) the trial court erred in foreclosing Prime's mechanic's

4

lien; (3) the trial court erred in setting the priority of the various liens on the property; and (4) the trial court abused its discretion in awarding Prime $27,543.75 in attorney's fees. Prime raises one argument: (5) it is entitled to appellate attorney's fees in defending this appeal.

## I. Mechanic's Lien

Because the trial court entered findings of fact and conclusions of law, we apply a two-tiered standard of review. *Mueller v. Karns*, 873 N.E.2d 652, 657 (Ind. Ct. App. 2007), *reh'g denied.* We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id.* We will not reverse the trial court's findings or the judgment unless clearly erroneous. Ind. Trial Rule 52(A); *Mueller*, 873 N.E.2d at 657. A finding is clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support it. *Mueller*, 873 N.E.2d at 657. The judgment is clearly erroneous when it is unsupported by the findings and the conclusions. *Id.* In conducting this review, we neither reweigh evidence nor judge witness credibility and consider the evidence in a light that is most favorable to the judgment. *Id.* While we defer to the trial court substantially on its findings of facts, we owe no deference to the trial court's conclusions of law, and we review them de novo. *Id.*

### A. *Prime's Completion of the Contract*

Petkovich contends that the trial court's finding that Prime completed the contract and was owed an additional $31,080.67 is clearly erroneous. We disagree.

Under Indiana law, recovery for a mechanic's lien is allowed "only to the extent of any balance owed under that contract." *Farah, LLC v. Architura Corp.*, 952 N.E.2d 328, 334 (Ind. Ct. App. 2011). The trial court found that the contract at issue in this case included both the original insurance contract as well as the extras contract that was signed by Petkovich and Prime on March 28, 2008, and listed all of the "add-ons not covered by insurance." Plaintiff's Ex. 2, 6.

Viewing the testimony in the light most favorable to the trial court's judgment, Prime completed $226,619.04 worth of work. This consisted of $100,000 worth of work completed under the original insurance contract, $41,565.40 worth of work under the "extras contract,"[1] $14,200 for personal loans to Petkovich, $9500 for kitchen cabinets, $8494.65 for appliances, $2000 for windows, over $25,000 for multiple requested upgrades, and $25,000 for change-order requests. Completion of $226,619.04 worth of work means that Prime completed the contract – which consisted of both the insurance contract and the extras contract – and was still owed a balance of $31,080.67.

We therefore cannot say that the trial court's finding was clearly erroneous. Petkovich's contention that the trial court erred is an attempt to have us reweigh the evidence, which we will not do. The trial court therefore did not err in finding that Prime completed the contract and was still owed an additional $31,080.67 for uncompensated work.

*B. Foreclosure of the Mechanic's Lien*

---

[1] The extras contract was originally for $57,765.40 worth of work. However, at trial, it was noted that the personal loans made to Petkovich and the payment to replace the windows in the house were included in both the extras contract and in Prime's calculation of expenses outside of the contract. To rectify this, the trial court deducted those two amounts, which equaled $16,200, from the extras contract.

Petkovich also contends that the trial court erred in foreclosing Prime's mechanic's lien. Under Indiana Code section 32-28-3-6, "a person may enforce a lien by filing a complaint in the circuit or superior court of the county where the real estate or property that the subject of the lien is situated." This complaint must be filed within one year after filing the notice of intention to hold a lien. Ind. Code § 32-28-3-6. In this case, Prime filed its intention to hold a lien on April 9, 2008, and filed its complaint to enforce the lien on January 29, 2009, within the one-year period. Appellant's App. p. 13-14.

Petkovich contends that Prime cannot recover since it had not completed the work it had been paid for under the contract. However, the contract was completed and there was an additional balance of $31,080.67 owed. The complaint was also properly and timely filed. Under Indiana law, a properly filed complaint and a balance owed is all that is necessary to foreclose a mechanic's lien. *See* I.C. § 32-28-3-6; *Farrah, LLC*, 952 N.E.2d at 334. Since Prime met those requirements, the trial court did not err in foreclosing the mechanic's lien.

### C. Priority of the Mechanic's Lien

Petkovich next contends that the trial court erred in setting the priority of the various liens on the property. Notably, Prime does not respond to this argument in its Appellee's Brief. In this case, the trial court entered an Order on Priority, concluding that Prime's mechanic's lien was subordinate only to a default judgment in favor of Chicago Patrolmen's Federal Credit Union and a judgment in favor of Gerald Lambert, and not subordinate to Household Finance Corporation III's mortgage. Appellant's App. p. 42. However, the trial court erred in this ruling; Prime's mechanic's lien should also be

7

subordinate to the mortgage that Household Finance Corporation III holds on the Petkovich property.

Priority of encumbrances on land is governed by Indiana Code section 32-21-4-1(b), which provides in relevant part that "[a] conveyance, mortgage, or lease takes priority according to the time of its filing." Household Finance Corporation III recorded its mortgage in 1999. As for Prime, Indiana Code section 32-28-3-5 dictates that a mechanic's lien "relates back to the date the mechanic or other person began to perform the labor or furnish the materials or machinery." Prime began work on Petkovich's house in 2008, nearly nine years after the mortgage on the house was recorded. Therefore, as a result of its earlier filing date, Household Finance Corporation III's mortgage has priority over Prime's mechanic's lien. *Greyhound Financial Corp. v. R.L.C., Inc.*, 637 N.E.2d 1325, 1328 (Ind. Ct. App. 1994) ("[T]he date on which a mortgage is recorded is dispositive for determining its priority with respect to a mechanic's lien.").

We therefore hold that the trial court erred in finding that Prime's mechanic's lien was subordinate only to a default judgment in favor of Chicago Patrolmen's Federal Credit Union and a judgment in favor of Gerald Lambert. Household Finance Corporation III's mortgage should also have priority over Prime's mechanic's lien, so we reverse and remand with instructions for the trial court to modify its Order on Priority.

## II. Attorney's Fees

Finally, Petkovich contends that the trial court abused its discretion in awarding Prime $27,543.75 in attorney's fees. Prime contends that Petkovich has waived the issue by failing to raise the argument before the trial court. However, waiver for not raising an

8

issue before the trial court applies only to "substantive questions independent in character and not within the issues or not presented to the trial court . . . ." *Bielat v. Folta*, 229 N.E.2d 474, 475 (Ind. Ct. App. 1967), *reh'g denied*. In this case, the trial court was presented with the issue of attorney's fees through Prime's affidavit, Petkovich's response, and the arguments by the parties made at the hearing. Appellant's App. p. 14-15. Therefore, the trial court had the opportunity to fully address the issue and render a ruling that we can review for an abuse of discretion. Petkovich has not waived this argument.

We will reverse a trial court's award of attorney's fees "only if there is a total lack of supporting evidence or the evidence is undisputed and leads solely to a contrary conclusion." *Korellis Roofing, Inc. v. Stolman*, 645 N.E.2d 29, 34 (Ind. Ct. App. 1995). The trial court is generally given discretion in its determination of what a reasonable award of attorney's fees is, but the amount of the award is "intended to reflect the amount the lienholder reasonably had to expend to foreclose the lien." *Id.* at 33.

Attorney's fees for a successful action to enforce a lien are governed by Indiana Code section 32-28-3-14, which states that "in an action to enforce a lien under this chapter, a plaintiff or lienholder who recovers a judgment *in any sum* is entitled to recover reasonable attorney's fees. The court shall enter the attorney's fees as a part of the judgment." (Emphasis added). Since Prime recovered $31,080.67 under its mechanic's lien, it is entitled to reasonable attorney's fees. Despite Petkovich's argument to the contrary, the statute does not require consideration of the amount recovered in the judgment; the only consideration is whether any sum is recovered by the prevailing party.

9

Petkovich also contends that since Prime recovered only forty percent of what it demanded under the mechanic's lien, it should not recover almost seventy-five percent of the amount it demanded for attorney's fees. However, we are not in a position to reweigh the evidence, and we will not second-guess the trial court's decision. There is not a total lack of supporting evidence for this award, and the evidence does not lead solely to the conclusion that this award is excessive, so we must affirm the trial court's ruling.

### III. Appellate Attorney's Fees

Prime contends that it is entitled to appellate attorney's fees for defending this action. Our appellate rules authorize us to "assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Ind. Appellate Rule 66(E). Damages will be assessed only where an appellant, acting in bad faith, maintains a wholly frivolous appeal. *Harness v. Schmitt*, 924 N.E.2d 162, 168 (Ind. Ct. App. 2010). While Appellate Rule 66(E) allows us to award damages on appeal, we must act with extreme restraint in this regard due to the potential chilling effect on the exercise of the right to appeal. *Id.* "A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious." *Id.*

To prevail on its claim, Prime must show that Petkovich's arguments on appeal are "utterly devoid of all plausibility." *Bergerson v. Bergerson*, 895 N.E.2d 705, 716 (Ind. Ct. App. 2008) (citations omitted). Prime has failed to do this, so we therefore deny its request for appellate attorney's fees.

Affirmed in part, reversed in part, and remanded with instructions.

MATHIAS, J., and BARNES, J., concur.