**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 18 2013, 5:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEWIS MAUDLIN**
Salem, Indiana

ATTORNEYS FOR APPELLEES:

Attorney for MLP Services, LLP
**RICHARD WAYNE GREESON**
Connersville, Indiana

Attorney for Jefferson County Auditor and Jefferson County Treasurer
**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE MATTER OF CERTAIN PROPERTIES BEING SOLD FOR DELINQUENT TAXES | ) ) ) ) | |
| TAX SALE CERTIFICATE #3910192 PARCEL #39-0-17-114-024.000-007 | ) ) ) | |
| NORMAN EGGERS, | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 39A01-1211-MI-527 |
| MLP SERVICES, LLP and JEFFERSON COUNTY, INDIANA AUDITOR and JEFFERSON COUNTY, INDIANA TREASURER, | ) ) ) ) ) ) | |
| Appellees-Petitioners. | ) ) | |

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Ted R. Todd, Judge
Cause Nos. 39C01-1010-MI-608, 39C01-1112-MI-1124

**September 18, 2013**

**MAY, Judge**

Norman Eggers appeals the sale of his real property at a tax sale. He raises three issues, which we consolidate[1] and restate as: whether the County proved the tax sale purchaser paid all taxes, special assessments, penalties, and costs; and whether the County improperly applied the surplus from the sale. On cross-appeal, MLP Services LLP, the tax sale purchaser, argues Eggers' appeal is frivolous and brought in bad faith, and therefore it is entitled to attorney fees for its defense of the appeal. We affirm and remand.

## FACTS AND PROCEDURAL HISTORY

In October 2010, Jefferson County sold two parcels of Eggers' real estate at a tax sale. MLP Services, LLC, bought a parcel on Hooten Boulevard in Madison that included Eggers' home, and John Etherton[2] bought a parcel on Fourth Street. Although Eggers disputed certain liens and assessments on the properties, he knew he was responsible for the taxes on them, and he knew they were being sold at the tax sale. He did not redeem the properties by the statutory deadline, and tax deeds were issued to MLP and Etherton. Each property sold for more than the amount of its tax arrearage, and the surplus from the Etherton property was returned to Eggers. At the time of the hearing on MLP's request for issuance of a tax deed, the County had not returned the surplus from the sale to MLP.

---

[1] Eggers moved on appeal to strike much of the evidence on which the trial court's findings were based, and one of Eggers' issues is premised on the non-existence of that evidence. As we have denied his motion to strike in a separate Order, that evidence is in the record before us and we do not address that allegation of error.

[2] It does not appear Eggers challenged the deed issued to Etherton, and Etherton is not a party to this appeal.

In June 2012, the trial court conducted a hearing at which Eggers appeared in person and by counsel. In October 2012, it issued a judgment directing the issuance of a tax deed to MLP.

**DISCUSSION AND DECISION**

If an owner of real estate does not pay the property taxes, the property may be sold to satisfy the tax obligation. *Schaefer v. Kumar*, 804 N.E.2d 184, 191 (Ind. Ct. App. 2004), *trans. denied*. The tax sale process is a purely statutory creation and requires material compliance with each step of the governing statutes, Ind. Code §§ 6-1.1-24-1 through -14 (sale) and 6-1.1-25-1 through -19 (redemption and tax deeds). *Id*. The issuance of a tax deed creates a presumption that a tax sale and all of the steps leading up to the issuance of the tax deed are proper. *Id.* However, this presumption may be rebutted by affirmative evidence to the contrary. *Id.*

When, as here, a trial court has entered findings of fact and conclusions of law pursuant to a party's request, we engage in a two-tiered standard of review. We first determine whether the evidence supports the findings of fact and then whether the findings support the judgment. *Mueller v. Karns*, 873 N.E.2d 652, 657 (Ind. Ct. App. 2007), *reh'g denied*. We will not reverse the findings and judgment unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences from the evidence to support them. *Id.* The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. *Id.* In making these determinations, we will not reweigh evidence or judge witness credibility; we consider

3

only the evidence favorable to the judgment and all reasonable inferences therefrom. *Id.* We defer substantially to findings of fact, but not to conclusions of law. *Id.* We apply a *de novo* standard of review to conclusions of law and owe no deference to the trial court's determination of such questions. *Id.*

1. Payment of Subsequent Taxes

Eggers asserts "there is a complete lack of evidence to support the finding by the Trial Court that all subsequent **taxes had been paid** as required by I.C. 6-1.1-25-4.6(b)(3)[.]" (Br. of Appellant Norman L. Eggers (hereinafter "Eggers Br.") at 7) (bold type in original). There was ample evidence to support the finding.

Ind. Code § 6-1.1-25-4.6(b)(3) provides:

Not later than sixty-one (61) days after the petition is filed under subsection (a), the court shall enter an order directing the county auditor (on the production of the certificate of sale and a copy of the order) to issue to the petitioner a tax deed if the court finds that the following conditions exist:
* * * * *
(3) Except with respect to a petition for the issuance of a tax deed under a sale of the certificate of sale on the property under IC 6-1.1-24-6.1 or IC 6-1.1-24-6.8, all taxes and special assessments, penalties, and costs have been paid.

MLP's attorney submitted a verified petition that said "Purchaser has paid the real estate taxes and assessments on the parcel that are due and payable subsequent to the year of the tax sale." (Appellee's App. at 41.)[3] MLP offered that verified petition into evidence, and

---

[3] Eggers submitted an Appendix, but it does not include MLP's verified petition. He did include a Verified Petition for Tax Deed submitted by Etherton, but as noted above, it does not appear he challenged the sale to Etherton. Our rules require "documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal." Ind. Appellate Rule 50. Thus, Eggers was required to provide the MLP petition.

4

Eggers' trial counsel, who now represents Eggers on appeal, explicitly stated he had no objection. That evidence permitted the trial court's finding. *See, e.g., Campbell v. State*, 229 Ind. 198, 205, 96 N.E.2d 876, 879 (1951) (when verified petition is introduced in evidence it becomes competent proof of the facts therein contained).

The record contained additional evidence the subsequent taxes had been paid. An employee of the Auditor's office testified no taxes were owed on the property and "everything was current." (Tr. at 85.) Eggers testified he was told by the Auditor's office that MLP's principal had "come to pay the uh . . . taxes that would have been payable and due on November the 10th." (*Id.* at 35.) The trial court's finding was supported by ample evidence.

### 2. Application of Surplus

Eggers next argues the County Auditor and Treasurer did not properly apply the surplus money from the tax sale. Ind. Code § 6-1.1-24-7(a)[4] provides in pertinent part:

> When real property is sold under this chapter, the purchaser at the sale shall immediately pay the amount of the bid to the county treasurer. The county treasurer shall apply the payment in the following manner:
> (1) first, to the taxes, special assessments, penalties, and costs described in section 5(f) of this chapter;
> (2) second, to other delinquent property taxes in the manner provided in IC 6-1.1-23-5(b); and

---

[4] Eggers also asserts the County did not follow Ind. Code § 6-1.1-24-6.4, which provides for the county treasurer's application of funds paid when "a certificate of sale is sold under this chapter." Eggers offers no explanation why this section applies to his case, and he points to nothing in the record to indicate the sale of "a certificate of sale" is involved. We accordingly decline to address that section.

5

(3) third, to a separate "tax sale surplus fund."[5]

Both of Eggers' properties were sold at the same tax sale, and Eggers asserts the County did not properly apply the surplus. His reasoning appears to be that the County was obliged to apply the surplus from the property Etherton bought to pay delinquent property taxes on the separate parcel that MLP bought at the same tax sale: "In this case, rather than applying the surplus on either property to the other property's unpaid taxes, the county chose to just hold onto the funds. Clearly, the government attempted to exercise its power to gain the most money from Mr. Eggers' financial problems." (Eggers Br. at 11.)

The statute cannot be read to impose an obligation on the County to apply money from the sale of one property to taxes due on some other property sold at the same time. The tax sale statutes were not designed to protect those who receive actual notice of a tax sale but do nothing further to protect their interests in the property. *Green Tree Servicing, LLC v. Random Antics, LLC*, 869 N.E.2d 464, 471 (Ind. Ct. App. 2007). Nor does the statute require the County, after selling one of Eggers' properties, to determine whether he owned additional property that was sold at the same time, and then pay the taxes on that different property for him.

---

[5] Ind. Code § 6-1.1-24-7(c) provides:
> The:
> (1) owner of record of the real property at the time the tax deed is issued who is divested of ownership by the issuance of a tax deed; or
> (2) tax sale purchaser or purchaser's assignee, upon redemption of the tract or item of real property;
> may file a verified claim for money which is deposited in the tax sale surplus fund. If the claim is approved by the county auditor and the county treasurer, the county auditor shall issue a warrant to the claimant for the amount due.

Eggers relies on Ind. Code § 6-1.1-24-7(c)(2), which directs the county treasurer to apply the payment at a tax sale, after paying the taxes, special assessments, penalties, and costs described in Ind. Code § 6-1.1-24-5(f),[6] "to other delinquent property taxes." But that subsection could not require the County to apply the surplus from the Etherton purchase to the MLP purchase at the same sale. When MLP bought the property at the tax sale, the statute required MLP to "immediately pay the amount of the bid to the county treasurer," Ind. Code § 6-1.1-24-7(a), which bid must be enough to cover the delinquent taxes on the parcel. Ind. Code § 6-1.1-24-5(f). The treasurer was then required to apply the payment "first, to the taxes, special assessments, penalties, and costs" due on that parcel. Ind. Code § 6-1.1-24-7(a).

The effect of those requirements is that after the Eggers parcels were sold, there were no "delinquent" property taxes for either parcel. The County therefore was not obliged to apply the surplus from one parcel to Eggers' other parcel that had been sold at the same time.

3.      Frivolous Appeal

_____

The record does not reflect Eggers made such a verified claim.

[6]  Ind. Code § 6-1.1-24-5(f) provides:

> Except as provided in subsection (g), a tract or an item of real property may not be sold for an amount which is less than the sum of:
> (1) the delinquent taxes and special assessments on each tract or item of real property;
> (2) the taxes and special assessments on each tract or item of real property that are due and payable in the year of the sale, regardless of whether the taxes and special assessments are delinquent;
> (3) all penalties which are due on the delinquencies;
> (4) the amount prescribed by section 2(a)(3)(D) of this chapter reflecting the costs incurred by the county due to the sale;
> (5) any unpaid costs which are due under section 2(b) of this chapter from a prior tax sale; and
> (6) other reasonable expenses of collection, including title search expenses, uniform commercial code expenses, and reasonable attorney's fees incurred by the date of the sale.

Indiana Appellate Rule 66(E) provides in part we "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution." We use extreme restraint when exercising our discretionary power to award damages on appeal because of the potential chilling effect on the exercise of the right to appeal. *Harness v. Schmitt*, 924 N.E.2d 162, 168 (Ind. Ct. App. 2010). A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious. *Id.* MLP has made such a showing.

Bad faith on appeal may be "substantive" or "procedural." *Id*. Substantive bad faith implies conscious wrongdoing because of "dishonest purpose or moral obliquity." *Id.* (quoting *Wallace v. Rosen,* 765 N.E.2d 192, 201 (Ind. Ct. App. 2002). There is procedural bad faith when a party flagrantly disregards the form and content requirements of our rules, omits and misstates relevant facts appearing in the record, and files briefs appearing to have been written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Id*.

Eggers' statement of the case did not include citations to the record, in violation of App. R. 46(A)(5). Both the statement of facts and the statement of the case "are replete with self-serving facts and argument and thus do not abide by the requirement of our appellate rules to present the facts according to the standard of review appropriate for the judgment being appealed." *In re Paternity of Jo.J.*, 2013 WL 3892819 at *1 n.2 (Ind. Ct. App. July 30, 2013) (citing App. R. 46(A)(5-6)). Both include facts not favorable to the judgment and

8

exclude facts supporting the judgment, and they represent the kind of "transparent attempt to discredit the judgment" that we have often disapproved. *See*, *e.g.*, *Barth v. Barth*, 693 N.E.2d 954, 956 (Ind. Ct. App. 1998) ("[t]he Statement of Facts Robert's counsel offers us is . . . a transparent attempt to discredit the judgment, and it is clearly not intended to be a vehicle for informing this court"), *trans. denied*.

To further show procedural bad faith, MLP points to Eggers' "strategically incomplete" appendix. (Appellee's Br. at 37.) As noted above, some highly relevant documents were excluded, apparently selectively, from Eggers' appendix.

Eggers alleges the County did not conduct the tax sale pursuant to statute because "no application for tax sale or required affidavit was filed to start the tax sale," (Eggers Br. at 12), and Eggers does not include any such document in his appendix. "Since neither the Auditor nor the Court have a copy" of the documents, he says, "it is logical to assume [they] do not exist." (*Id*.) But those documents did exist, as reflected by an "Addendum to Chronological case summary" dated November 30, 2012.[7] (Appellee's App. at 67.) At any rate, there was

---

[7] Eggers submitted a reply brief, but does not respond to MLP's argument his appeal was frivolous and brought in in bad faith except to assert that two documents he omitted from his appendix were not placed into the trial record until after he submitted his brief:

> no joint application or affidavit for the tax sale existed in any file until after the Appellant's Brief at which time Appellee's [sic] had the Trial Court change the record on appeal adding a joint application for tax sale and affidavit which Appellee claims was located in the Court file but was not file stamped or found by the Clerk when the original Court Record was prepared.

(Eggers Reply Br. at 1.) Eggers says the documents "miraculously appeared" after he filed his brief. (*Id*. at 3.)
  Regardless whether the documents were added to the record when the Clerk certified them on November 30, 2012, or miraculously appeared later, we note the trial court explicitly referred, in the judgment Eggers now appeals, to the Joint Affidavit. We further note Appellate Rule 50(D) permits supplementation of an Appendix.

ample evidence Eggers knew he was responsible for the taxes on the properties and was aware his properties were being sold at the tax sale, but he did not redeem the properties because he disputed their valuation and certain liens on the properties.

Nor did Eggers' Appendix include the trial court's 2010 Order that referred to the documents addressed above, or MLP's Verified Petition for Tax Deed which, as explained above, provided evidence the subsequent taxes had been paid. We must agree with MLP's characterization of Eggers' Appendix as "strategically incomplete, excluding all documents unfavorable to Eggers' issues and arguments." (Appellee's Br. at 37.)

To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and argument are utterly devoid of all plausibility. *Id*. at 169. Substantive bad faith "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." *In re Estate of Carnes*, 866 N.E.2d 260, 269 (Ind. Ct. App. 2007) (quoting *Wallace v. Rosen,* 765 N.E.2d 192, 201 (Ind. Ct. App. 2002)). In *Carnes*, we noted:

> Carnes is ignoring the import of [an Arizona judgment] in his attempt to re-litigate his claims. Carnes has steadfastly ignored unfavorable factual determinations and rulings by both the Indiana and the Arizona trial courts. His brief is fraught with baseless accusations, and in particular unfounded accusations regarding [a will contestant's] conduct. Therefore, we conclude that the underlying litigation was merely another attempt to delay the probate of [the decedent's] will and to harass [the contestant].

*Id*. (internal citation and quotation omitted). Carnes' Appendix did "not contain crucial documents regarding the previous disposition of these issues" in Arizona. *Id*. at 268. We noted his "tirade of accusations, repeated in every section of his brief," *id*., and found the Estate was entitled to attorney fees for its defense of the appeal. *Id*. at 269.

10

MLP notes a number of misrepresentations and "scandalous," (Appellee's Br. at 15), statements Eggers made on appeal. Eggers' counsel says Eggers "attempted to get the county to do something to save his property and correctly apply the surplus even retroactively." (Eggers Br. at 11.) Counsel offers three citations to the record, none of which support that statement. Eggers said there was "a complete lack of evidence to support the finding by the trial Court that all subsequent **taxes had been paid**." (*Id*. at 7) (emphasis in original). As explained above, that is a misrepresentation of the record, which contains ample evidence the taxes were paid. Eggers' counsel poses the question "[w]hy would a county government fail to apply the surplus as prescribed by law?", (*id*. at 11), then answers that question by asserting "the county is generating interest on someone else's money . . . [c]learly, the government attempted to exercise its power to gain the most money from Mr. Eggers' financial problems." (*Id*.)

He makes similar suggestions of misconduct by the County throughout his brief. For example, he claims: "Jefferson County could have applied the tax sale surplus from [the Etherton parcel] to pay the taxes on the Eggers home. . . . Instead, Jefferson County profited from its failure to apply the surplus as required by law," (*id*. at 4); the "Court signed the [tax sale] order . . . without regard for the law," (*id*.); "Mr. Eggers' hands were tied by Jefferson County who sold all of his property and held all the surplus," (*id*. at 11); "[i]f the law is too burdensome for the Auditor and Treasurer to follow, then they should not have a tax sale in their county. This tax sale seeks to deprive a citizen of his home." (Reply Br. of Appellant Norman L. Eggers (hereinafter "Eggers Reply Br.") at 1); "it appears that Jefferson county

11

will do anything [*e.g.*, commencing a case without required documentation, receiving evidence *ex parte*, and modifying the record without giving Eggers an opportunity to object] to uphold this particular tax sale," (*id.* at 6); and "[t]he statutes however do not give the Auditor discretion to play games with people's homes. . . . The statute does not say to wait until after the Auditor chooses to sell more of the homeowner's property." (*Id.* at 4-5.) These statements, along with Eggers' incomplete Appendix and other violations of our rules, demonstrate his appeal was brought in bad faith because they are not "consistent with reasonable advocacy grounded in established legal principles." *Indiana CPA Soc'y, Inc. v. GoMembers, Inc.*, 777 N.E.2d 747, 753-54 (Ind. Ct. App. 2002).

Because we find Eggers' appeal was brought in bad faith, we remand to the trial court pursuant to Indiana Appellate Rule 66(E) for a determination of appellate damages, which may include attorney fees. *Poulard v. Laporte Cnty. Election Bd.*, 922 N.E.2d 734, 736 (Ind. Ct. App. 2010).

## CONCLUSION

There was evidence to support the trial court's determination all subsequent taxes had been paid on the tax sale properties, and the County Auditor did not misapply the tax sale surplus. We accordingly affirm the judgment directing the issuance of a tax deed to MLP. As Eggers' appeal was brought in bad faith, we remand so the trial court may determine damages.

Affirmed and remanded.

BAKER, J., and MATHIAS, J., concur.

12